Orlando Javier PEREZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–97–095–CR.

Court of Appeals of Texas,
Corpus Christi.

Jan. 11, 2001.

Rehearing Overruled March 8, 2001.

**714**

Larry Warner, Brownsville, for Appellant.

Matthew W. Paul, State Attorney, Austin, Yolanda De Leon, District Attorney, Brownsville, for the State.

Before Justices DORSEY, HINOJOSA, and RODRIGUEZ.

## OPINION

RODRIGUEZ, Justice.

This case is before us on remand from the Texas Court of Criminal Appeals. As a result of his involvement in a drive-by shooting, a jury convicted appellant, Orlando Javier Perez, of aggravated assault with a firearm[1] and assessed his punishment at fifteen years imprisonment. By four issues Perez complains that: (1) the evidence is legally and factually insufficient; (2) article 44.46 of the Texas Code of Criminal Procedure conflicts with the Texas Constitution; (3) the court abused its discretion when it required a co-defendant to refuse to take the oath in the presence of the jury; and (4) the court erred in admitting tainted eyewitness identifications. We affirm.

---

1. *See* Tex. Pen. Code Ann. § 22.02(a) (Vernon 1994). Perez was found guilty based on the law of parties. *See* Tex. Pen. Code Ann. §§ 7.01, 7.02(a)(2) (Vernon 1994).

In our original opinion, we concluded article 44.46 of the Texas Code of Criminal Procedure was in conflict with article XVI, section 2 of the Texas Constitution, and reversed and remanded for a new trial. *See Perez v. State,* 973 S.W.2d 759, 762, 762 (Tex.App.—Corpus Christi 1998), *rev'd,* 11 S.W.3d 218, 221 (Tex.Crim.App. 2000) (en banc). The court of criminal appeals granted the State's petition for discretionary review, reversed our judgment on the constitutionality of article 44.46 as applied to Perez, and remanded this issue for our reconsideration in a manner consistent with its opinion. *See Perez,* 11 S.W.3d at 221.

By his second issue, Perez asserts that article 44.46 of the Texas Code of Criminal Procedure is incompatible with the Texas Constitution because it undermines the right to trial by a qualified jury. After reconsideration consistent with the court of criminal appeals' opinion, we overrule this issue.

■ Perez filed a motion for new trial alleging, *inter alia,* that a disqualified juror sat on the jury panel. At the hearing on his motion, Perez and the State entered into the following stipulations: (1) one of the jurors had a final conviction for felony driving while intoxicated; and (2) this information was not ascertained until after the verdict was rendered. The trial court overruled Perez's motion for new trial on the basis that Perez failed to make a showing of "significant harm," as mandated by article 44.46(2).

The Texas Constitution provides that "laws shall be made to exclude from ... serving on juries ... those who may have been or shall hereafter be convicted of bribery, perjury, forgery, or other high crimes." TEX. CONST. art. XVI, § 2. Perez argues that felony driving while intoxicated is a "high crime," and, thus, the juror should have been constitutionally disqualified.

The Texas Code of Criminal Procedure, article 44.46, sets out statutory juror disqualifications. It provides:

A conviction in a criminal case may be reversed on appeal on the ground that a juror in the case was absolutely disqualified from service under Article 35.19 of this code only if:

(1) the defendant raises the disqualification before the verdict is entered; or

(2) the disqualification was not discovered or brought to the attention of the trial court until after the verdict was entered and the defendant makes a showing of significant harm by the service of the disqualified juror.

TEX. CODE CRIM. PROC. ANN. art. 44.46 (Vernon Supp. Pamph.2001). Article 35.19 provides that "no juror shall be impaneled when it appears that he is subject to the second, third or fourth ground of challenge for cause in Article 35.16, though both parties may consent." TEX. CODE CRIM. PROC. ANN. art. 35.19 (Vernon 1989). Article 35.16 provides, in relevant part:

(a) A challenge for cause is an objection made to a particular juror, alleging some fact, which renders him incapable or unfit to serve on the jury. A challenge for cause may be made by either the state or the defense for any of the following reasons:

\* \* \* \* \* \*

2. That he has been convicted of theft or any felony;

3. That he is under indictment or other legal accusation for theft or any felony;

4. That he is insane....

TEX. CODE CRIM. PROC. ANN. art. 35.16(a) (Vernon 1989).

The Texas Court of Criminal Appeals recently determined in this case that felony driving while intoxicated cannot reasonably be characterized as a "high crime" because it does not have the same type of moral corruption and dishonesty inherent in those specified offenses of bribery, forgery and perjury. *See Perez,* 11 S.W.3d at 221 (citing *Perez,* 973 S.W.2d at 763–64 (Dorsey, J., dissenting)); *see also* TEX. PEN. CODE ANN. §§ 49.04, 49.09(b) (Vernon Supp.2001). Thus, felony driving while intoxicated is not a constitutional disqualification; rather, it is a statutory disqualification. *See Perez,* 11 S.W.3d at 221. Accordingly, we conclude there is no conflict between article XVI, section 2 of the Texas Constitution and article 44.46 of the Texas Code of Criminal Procedure.[2]

■ Because we have determined that the juror disqualification in this case is a statutory disqualification, and that it was not discovered until after the verdict was entered, Perez must show "significant harm by the service of the disqualified juror." *See* TEX. CODE CRIM. PROC. ANN. art. 44.46(2) (Vernon Supp. Pamph.2001). Perez complains that the juror-felon's service demonstrated significant harm, and that it was harmful *per se.* However, Perez points us to nothing in the record, makes no argument, and cites no authority to support his contention. *See* TEX. R. APP. P. 38.1(h)(appellant's brief to contain clear and concise argument for contentions made with appropriate citations to authorities and to record). An assertion without argument, authority or record cites presents nothing for our review.[3] *See id.; McFarland v. State,* 928 S.W.2d 482, 512 (Tex.Crim.App.1996). We conclude that Perez's allegations regarding significant harm are inadequately briefed. Further, a conviction alone does not constitute "significant harm" within the meaning of article 44.46. *See State v. Read,* 965 S.W.2d 74, 77 (Tex.App.—Austin 1998, no pet.); *Hernandez v. State,* 952 S.W.2d 59, 71 (Tex. App.—Austin 1997, pet. granted), *vacated on other grounds,* 957 S.W.2d 851 (Tex. Crim.App.1998). Perez's second issue is overruled.

■ By his first issue, Perez argues the evidence is neither legally nor factually sufficient to establish he knew of the intent of the shooter, or that he did anything with the specific intent to aid the shooter in committing the assault.

■ When reviewing the legal sufficiency of the evidence, we review the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000); *Skinner v. State,* 956 S.W.2d 532, 536 (Tex.Crim.App.1997). In conducting this review, we do not weigh the evidence tending to establish guilt and innocence or assess the credibility of the witnesses on each side. *See Ex parte Elizondo,* 947 S.W.2d 202, 205 (Tex.Crim.App. 1996). The jury is the sole trier of fact, and may judge the credibility of the witnesses, reconcile conflicts in the testimony,

---

**2.** Perez also asserts error on the following bases: (1) the disqualification is constitutional and only a constitutional amendment could change it, not a mere statute; and (2) article 44.46 offends the constitutional separation of powers by altering the burden of proof on the issue of harm. Having concluded there is no conflict between the constitution and statute, we need not address these assertions.

**3.** Further, Perez urges ineffective assistance of counsel, yet he provides this Court with no argument, authority or record cites for this contention. *See* TEX. R. APP. P.38.1(h).

and accept or reject any or all of the evidence on either side. *See Chambers v. State,* 805 S.W.2d 459, 461 (Tex.Crim.App. 1991); *see also Cain v. State,* 958 S.W.2d 404, 408–09 (Tex.Crim.App.1997). If there is evidence that establishes guilt beyond a reasonable doubt, and the trier of fact believes that evidence, the appellate court does not reverse the judgment on legal sufficiency grounds. *See Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

 When reviewing factual sufficiency, we view all of the evidence without the prism of "in the light most favorable to the prosecution" and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. See *Johnson,* 23 S.W.3d at 11; *Cain,* 958 S.W.2d at 407; *Clewis v. State,* 922 S.W.2d 126, 135 (Tex. Crim.App.1996). The review must be appropriately deferential so as to avoid substituting this Court's judgment for that of the jury. *See Cain,* 958 S.W.2d at 407.

 A person commits the offense of aggravated assault if he uses or exhibits a deadly weapon while intentionally or knowingly threatening another with imminent bodily injury. *See* Tex. Pen. Code. Ann. § 22.02(a) (Vernon 1994). A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, the conduct of another for which he is criminally responsible, or both. *See* Tex. Pen. Code Ann. § 7.01(a). A person is criminally responsible for an offense committed by another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *See* Tex. Pen. Code Ann. § 7.02(a)(2). Sufficiency of the evidence is measured by the elements of the offense as defined by the "hypothetically correct jury charge for the case."

*See Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997).

 In determining attempts to aid the other person to commit the offense, the fact finder may consider events occurring before, during or after the commission of the offense. *See Beardsley v. State,* 738 S.W.2d 681, 684 (Tex.Crim.App. 1987). Furthermore, circumstantial evidence may be sufficient to show that one is a party to an offense. *See id.* Finally, intent may be inferred from circumstantial evidence such as the acts, words, and conduct of the accused. *See Wolfe v. State,* 917 S.W.2d 270, 275 (Tex.Crim.App.1996); *Patrick v. State,* 906 S.W.2d 481, 487 (Tex. Crim.App.1995).

The evidence in this case reveals that a white Grand Marquis, an older model gray Grand Marquis, and a green truck were involved in the shooting incident. Amos Gonzalez, a passenger in the back seat of the truck, drove with his friends to Morningside Park on the evening of the incident. They stopped in a parking lot about ten yards from five or six females and three males who were walking towards their cars. The females drove away in the gray Grand Marquis, the males in the white Marquis. Before they drove away, Gonzalez saw Perez walk to the white Grand Marquis, open its door, and stare at the truck before getting into the driver's seat of the car. Gonzalez testified he saw Perez's face in adequate lighting from the stadium lights. Gonzalez identified Perez as the driver in a photo lineup and made an in-court identification of Perez.

Gonzalez testified that the gray Marquis, the white Marquis, and the truck, in that order, left the park and turned onto Central Avenue. The white Marquis slowed down to five miles per hour and moved to the shoulder of the road. The truck then passed the white Marquis. Gonzalez next saw the white Marquis pull

up beside the truck, traveling along the center of the road. Gonzalez saw the window of the white Marquis roll down, and he heard gunshots. The truck window broke and glass fell on his arm. The car drove off and turned right at the next street. Ricardo Rios, another passenger in the truck, was bleeding.

Rosenda Garza, the owner and driver of the truck, testified that when she and her friends arrived at Morningside Park, she saw two cars; four males were in a white Marquis and several females were in another car. Garza testified the white Marquis and the truck passed each other several times along Central Avenue, until the white Marquis pulled up beside her truck and the shooting started. Three bullets hit the truck. One hit the roof, the second the driver's door, and the third a window. Rios was hit by one of the bullets. Garza did not identify the driver of the white Marquis.

Rios testified that when he and his friends arrived at Morningside Park the lights were on at the playing fields. They stopped to see if they knew any of the females waving to them. When the females left the park in their car, followed by several males in their own car, Rios and his friends also followed. At some point, the white Marquis moved to the side of the road and the truck passed it. The next thing Rios realized, he had been shot in the face. He testified the bullets came from the left, but he did not see who shot him.

Melba Murillo, one of the females in the gray Marquis, also testified about the events leading up to the shooting. From a photo lineup, Murillo identified Perez as the driver of the white Marquis.

Based on the foregoing evidence, and viewing it in the light most favorable to the trial court's judgment, a rational trier of fact could have found that Perez was the driver of the white Marquis, and could have inferred that Perez was a party to the offense by driving the car, pulling over to allow the truck to pass, pulling alongside the truck to allow the shooter to fire shots, passing the truck and then turning off of Central Avenue at the next corner. We conclude the evidence is legally sufficient to support Perez's conviction.

Further, viewing all of the evidence without the prism of "in the light most favorable to the prosecution," and granting appropriate deference to the jury's verdict, the judgment is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We conclude that the evidence is factually sufficient to support the conviction. Perez's first issue is overruled.

■ By his third issue, Perez complains that the trial court abused its discretion by requiring Guadalupe Flores, a co-defendant, to claim his right not to incriminate himself in the presence of the jury. Perez also contends that this procedure unfairly prejudiced the proceeding against him in violation of Texas Rule of Evidence 403.

■ Flores had already been convicted for his actions in the drive-by shooting. The record reveals that the State granted Flores use immunity. That is, the State agreed that any testimony Flores gave as a witness would not be used against him in a retrial, or any other proceeding he might pursue related to his case. A prosecutor may bind himself to an agreement for use immunity. *See Graham v. State,* 994 S.W.2d 651, 656 (Tex. Crim.App.1999). In doing so, the prosecutor agrees to refrain from using particular evidence against the witness. *See id.* A witness who has been granted use immunity for his testimony, does not have a valid basis for refusing to testify. *See Coffey v.*

*State,* 796 S.W.2d 175, 179 (Tex.Crim.App. 1990) (citations omitted). Because Flores had been granted use immunity for his testimony, he did not have a valid basis for refusing to be sworn in by the trial court. Accordingly, the State had the right to compel Flores's testimony and the trial court did not err in requiring Flores to take the witness stand.

■ We next consider whether calling Flores as a witness unfairly prejudiced Perez. *See id.* at 177 n. 4 (it could have been error had the State asked witness a series of damaging questions in such a way as to invite jury to assume answers to each question would have been in the affirmative). Perez relies on *Vargas v. State,* 442 S.W.2d 686 (Tex.Crim.App.1969) and *Washburn v. State,* 164 Tex.Crim. 448, 299 S.W.2d 706 (1956), to support his contention that the proceeding prejudiced him.

In *Vargas,* the court held it was error to call a convicted co-indictee to the stand knowing he would invoke his fifth amendment privilege against self-incrimination. *See Vargas,* 442 S.W.2d at 687. The co-indictee claimed the privilege against self-incrimination throughout examination by the prosecutor. *See id.* After the witness's first refusal to answer, the prosecutor said: "This man has no right to refuse to testify on the grounds of incrimination. *He's already been convicted of the offense for which he is to be questioned." See id.* (emphasis in original). The court found error in the State calling the co-indictee as a state witness. *See id.* (citing *Washburn,* 299 S.W.2d at 706 (to place witness on stand and wring from him a refusal to testify, affording to jury an opportunity to consider refusal as circumstance of guilt, has been said to be "certainly prejudicial")). The *Vargas* court did not address the fact that the co-indictee had no valid fifth amendment privilege to invoke. *See Coffey v. State,* 744 S.W.2d 235, 238 (Tex.

App.—Houston [1st Dist.] 1987), *aff'd,* 796 S.W.2d 175, 180 (Tex.Crim.App.1990). The court also found reversible error in the prosecutor's statement that the co-indictee had already been convicted for the same offense. *See Vargas,* 442 S.W.2d at 687 (citations omitted).

In *Washburn,* the State offered the co-defendant witness immunity from any prosecution involving the transaction in the case. *See Washburn,* 299 S.W.2d at 707. This offer was for transactional immunity, not use immunity, and required approval of the court. *See id.* Because the prosecution failed to show the court's approval, immunity was not established. *See id.* Therefore, the co-defendant had a valid fifth amendment privilege to invoke. *See id.* Further, by asking fact-laden questions of the co-defendant witness, "the state was permitted to plant in the jury's mind full details as to how they claimed this crime was committed, and yet the only substantive evidence which they were producing was the answer of the witness that he refused to answer on the ground that his answers might tend to incriminate him...." *Id.* at 451, 299 S.W.2d 706. The court of criminal appeals determined that "[s]uch refusal to testify was prejudicial because it could be used as an incriminating fact against the appellant." *Id.*

*Washburn* and *Vargas* are distinguishable. *Washburn* involved a witness who invoked a valid fifth amendment privilege. Further, in each case the State asked questions of the witness. In *Washburn,* the State asked fact-laden questions to suggest how the crime was committed. In *Vargas,* although the court did not set out the State's line of questioning, it relied on *Washburn* concluding the proceeding was prejudicial. This suggests that it was not the calling of the witness who claimed his fifth amendment privilege but the questioning that influenced the courts' conclu-

sions. We also note that the *Vargas* court found reversible error in the State's comment following the witness's first refusal to answer. Importantly, "the fatal flaw in appellant's reasoning is the unstated assumption that any negative inference made by a jury when a witness refuses to testify is improper." *Coffey,* 796 S.W.2d at 178.

In this case, Flores had no valid fifth amendment privilege to claim. He refused to be sworn in by the trial court. Therefore, to the extent the State could have sought to compel Flores's testimony, Perez was not unfairly prejudiced. Further, unlike *Washburn* and *Vargas,* the State asked no fact-laden questions of Flores from which the jury could have inferred Perez's guilt, and the State did not comment on the witness's refusal to answer. Accordingly, we conclude Perez was not unfairly prejudiced. Perez's third issue is overruled.

■■■ In his fourth issue, Perez contends the trial court erred in denying his motion to suppress the identifications made by Murillo and Gonzalez. Perez claims that the photographic lineup, containing one "light-skinned" man (Perez) and five "coffee-colored" men, gave rise to a very substantial likelihood of irreparable misidentification. Perez argues Murillo's out-of-court identification was based on the suggestive photo lineup, and Gonzalez's in-court identification was tainted by the suggestive photo lineup. We disagree.

■■■ The standard for appellate review of a trial court's ruling on a motion to suppress allegedly tainted eyewitness identification is set out in *Loserth.* *See Loserth v. State,* 963 S.W.2d 770, 771 (Tex.Crim.App.1998)(applying *Guzman v. State,* 955 S.W.2d 85 (Tex.Crim.App.1997), standard to eyewitness identification). First, we consider whether the pretrial photographic identification was impermissibly suggestive, and if so, we then consider whether the procedure gave rise to a substantial likelihood of irreparable misidentification. *See Loserth,* 963 S.W.2d at 771–72 (citing *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)). When a reviewing court finds a lineup suggestive, it should consider the five *Biggers* factors[4] as issues of historical fact and give almost total deference to the trial court's ruling considering the evidence relative to those factors in the light most favorable to the trial court's ruling. *See Loserth,* 963 S.W.2d at 773–74. The factors, viewed in this light, should then be weighed de novo against "the corrupting effect" of the suggestive pretrial identification procedure. *See id.*

We have reviewed State's exhibit number 4, which is the original of the photographic spread shown to Murillo and Gonzalez. It contains photographs of head shots of six Hispanic males. All of the young men are of comparable age and facial features. All have short, dark hair. When presented with these pictures, both Murillo and Gonzalez picked Perez's pic-

---

4. In assessing reliability, the linchpin in determining admissibility of identification, the following five non-exclusive factors should be considered and weighed against the corrupting effect of any suggestive identification procedure:
 1. the witnesses's opportunity to view the defendant;
 2. the witness's degree of attention;
 3. the accuracy of the witness's description;
 4. the witness's level of certainty at the confrontation; and
 5. the length of time between the offense and the confrontation.

 *See Loserth v. State,* 963 S.W.2d 770, 772 (Tex.Crim.App.1998) (citing *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)); *Webb v. State,* 760 S.W.2d 263, 269 (Tex.Crim.App.1988) (citing *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)).

ture as the driver of the white Marquis. The skin color difference between appellant and the other five men is, in our view, minimal. We find the photographic lineup was not so impermissibly suggestive such that it would influence the pre-trial identifications made by Murillo and Gonzalez. Having found the line up was not impermissibly suggestive, we need not reach the second prong of *Loserth*. We conclude the trial court properly allowed the admission of the identification testimony. Issue four is overruled.

Accordingly, the judgment of the trial court is AFFIRMED.