NO. 12-00-00144-CR




IN THE COURT OF APPEALS

 



TWELFTH COURT OF APPEALS DISTRICT




TYLER, TEXAS


PATRICK ROY MCCULLER,

§

 APPEAL FROM THE 241ST

APPELLANT



V.

§

 JUDICIAL DISTRICT COURT OF



THE STATE OF TEXAS,

APPELLEE

§

 SMITH COUNTY, TEXAS

 

 Patrick Roy McCuller ("Appellant") was found guilty by a jury of the offense of Injury to a Disabled Individual. The
victim was his wife, Jana McCuller ("Jana"). The trial court assessed punishment at eighty years of imprisonment. 
Appellant raises five issues on appeal complaining that the evidence is both legally and factually insufficient, that his
counsel was ineffective, and that the trial erred in accepting an altered verdict form. We affirm.



Background


 According to the record, Jana has been an insulin-dependent diabetic since she was thirteen years of age. She lived with
her grandmother Arrie Secrest Robertson ("Robertson"). After she and Appellant married, they lived with Robertson until
her death. Appellant and Jana continued to live in the house located at 1425 South Augusta in Tyler. On May 1, 1995,
Jana walked over to the home of a neighbor, Geneva Laird ("Laird"), while Appellant was absent from the house. Laird
testified that Jana was in a nightgown, was dirty, and smelled bad. Jana requested food. Laird gave her two tuna fish
sandwiches, a bowl of fruit cocktail, a portion of string beans, six oatmeal cookies with cream centers and two glasses of
iced tea with sweetener and two cups of coffee with sweetener. Jana wanted to take a bath at the Laird's because she had
soiled herself while eating. Laird would not allow her to do so. However, Laird accompanied Jana back to her house. 
Laird testified that the smell in the house was intolerable and that there was no electricity. She called and reported the
incident to a relative of Jana's, who suggested Laird contact Adult Protective Services. Adult Protective Services, in turn,
notified the police of Jana's physical condition. The police investigated the situation and ordered an ambulance for Jana. 
She was hospitalized for a while and thereafter resided in a health care facility. Laird stated that Appellant came over the
next morning looking for Jana and told her that he had been at home all night. Laird was scared of Appellant because she
had seen him carrying a gun around his yard and would not let Jana's brothers and sisters see her.

 Tyler Police Officer Jeff Calloway ("Calloway") testified that he was dispatched to Jana's house on May 1, 1995. He
testified that she was wearing a wet T-shirt that smelled of urine, that her hair was matted, and that he saw sores on her
skin. He stated that there was no electric meter on the house and that he could not get water from an outside faucet. 
Calloway could see dog feces on the floor of the house, and the house smelled of dog feces and urine. 

 A paramedic, Jessica Calloway, testified that she was on duty at East Texas Medical Center and responded to Jana's house
on May 1, 1995. She testified that Jana's blood sugar was very high and that she was very dehydrated. Her observations of
Jana were that she was generally filthy.

 A family friend, Cordelia Pyle ("Pyle"), testified that she would check on Jana occasionally. She found her to be generally
neglected, dirty and hungry. On one particular occasion, Pyle found Jana unclothed and covered with excrement. The
house was dirty and unkempt. Pyle testified that Appellant did not properly care for his wife.

 Dr. David Jones ("Jones") testified that he was an on-call physician when Jana was brought to the emergency room. He
described her as very dirty and unkempt. He observed that she was chronically starved. Jones stated her blood sugar was
extremely high and that her bodily temperature was unusually low. He concluded that Jana was near death at the time she
reached the hospital. He stated that she was unable to care for herself and was a disabled person who was suffering from
neglect.

 Jeff Stephens lived across the street from Jana. He testified that he saw Appellant leave the house on May 1, 1995, prior to
the arrival of the police. He testified that Appellant did not stay at the house on a regular basis, but would come and go.

 Jana's sister, Trina Tunnell, testified that after their grandmother died, Appellant would not allow her to visit Jana and
made it very difficult to help take care of her.

 Dr. William Rogers ("Rogers") testified that during a prior hospitalization he noticed that whenever Appellant was around
Jana, her blood sugar would go out of control. The staff would find candy wrappers in Jana's room after his visits. Further,
they observed Appellant abuse Jana physically. Rogers testified that Jana's general deterioration was from a lack of
reasonable medical care and that she should have had professional medical care after 1992.



Sufficiency of the Evidence


 In issues one and two, Appellant complains that the evidence is legally and factually insufficient to support the jury's
verdict that he caused serious bodily injury to a disabled person. Specifically, he complains that the State did not prove that
on May 1, 1995, he intentionally and knowingly engaged in conduct that caused serious bodily injury to his wife, a disabled
person, by failing to provide reasonable medical care and by failing to provide food and water.

Legal Sufficiency

 Where a party seeks reversal of a conviction on grounds of both legal and factual insufficiency, an appellate court must
first determine whether the evidence adduced at trial was legally sufficient to support the verdict. See Clewis v. State, 922
S.W.2d 126, 133 (Tex. Crim. App. 1996). Our determination of sufficiency of the evidence requires that we review all
evidence, both admissible and inadmissible. Gardner v. State, 699 S.W.2d 831, 835 (Tex. Crim. App. 1985). The
standard of review that a court must follow in making a determination of legal sufficiency requires that it ask whether, after
reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781,
2789, 61 L. Ed. 2d 560 (1979). While conducting this review, a court does not reevaluate the weight and credibility of the
evidence but merely ensures that the jury reached a rational decision. Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim.
App. 1993). Finally, a finding of legal insufficiency under the Jackson standard requires that the reviewing court render a
judgment of acquittal. Clewis, 922 S.W.2d at 133.
 The indictment alleged that Appellant intentionally and knowingly caused serious bodily injury to Jana McCuller, a
disabled person, as defined in section 22.04 (c)(3) of the Texas Penal Code, by failing to provide reasonable medical care
and by failing to provide her food and water. Tex. Pen. Code Ann. § 22.04 (Vernon 1994). A person commits an offense if
he voluntarily engages in conduct, including an act or omission. Tex. Pen. Code Ann. § 6.01 (a) (Vernon 1994). A person
acts intentionally, or with intent, with respect to the nature of his conduct or to the result of his conduct when it is his
conscious objective or desire to engage in the conduct or cause the result. Tex. Pen. Code Ann. § 6.03(a) (Vernon 1994). 
"Conduct" means an act or omission and its accompanying mental state. Tex. Pen. Code Ann. § 1.07 (a)(10) (Vernon
1994). "Serious bodily injury" is defined as an injury that "creates a substantial risk of death or that causes death, serious
permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Pen. Code
Ann. § 1.07 (a)(46) (Vernon 1994). "Disabled individual" means a person older than fourteen years of age who by reason
of age or physical or mental disease, defect or injury is substantially unable to protect himself from harm or to provide
food, shelter or medical care for himself. Tex. Pen. Code Ann. § 22.04 (c)(3) (Vernon 1994). 

 We will apply the foregoing definitions of law to the facts. The State's evidence established that Appellant was Jana's
husband and by his own design was the only person responsible for her care. Jana was disabled and suffered from a severe
case of diabetes. Laird testified that on May 1, 1995, Jana came to her house hungry and dirty. Laird's testimony revealed
to the jury that Jana was not only unkempt but unable to care for herself. She was unable to control her excretory functions
and properly clean herself. Calloway affirmed Laird's observations and testified that he saw open sores on her skin. The
paramedic testified that her medical condition was very bad with elevated blood sugar and dehydration. Pyle told the jury
that in her opinion, Appellant did not properly care for Jana and that she was generally dirty and hungry. Dr. Jones testified
that she was near death when she arrived at the hospital. Evidence additionally revealed that Appellant physically abused
Jana and apparently gave her candy while she was eating her food. 

 After reviewing the record in the light most favorable to the conviction, we find the evidence to be legally sufficient for a
rational jury to find beyond a reasonable doubt that he intentionally and knowingly caused serious bodily injury to his
disabled wife, Jana McCuller, by failing to provide her with reasonable medical care, food, or water. Jackson, 443 U.S.
307 at 319, 99 S. Ct. at 2789. A culpable mental state may be inferred from circumstantial evidence, including evidence of
the accused's acts, words and conduct. Wolfe v. State, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996);Perez v. State, 41
S.W.3d 712, 717 (Tex. App.-Corpus Christi 2001, no pet.) The evidence discussed above is sufficient for the jury to find
that Appellant did, with the necessary culpable mental state, cause serious bodily injury to his disabled wife by failing to
provide her reasonable medical care, food and water. The testimony of neighbors, police, paramedics, and doctors
regarding Jana's condition and treatment is legally sufficient to support the jury's verdict. As a result, we overrule
Appellant's issue challenging the legal sufficiency of the evidence.

Factual Sufficiency

 After a court of appeals has determined that the evidence is legally sufficient to support the verdict, it may proceed to
review an appellant's claim of factual sufficiency. Clewis, 922 S.W.2d at 133. The Court of Criminal Appeals has held
that the proper standard of review for factual sufficiency of the evidence requires that the reviewing court set aside the
verdict only when it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Id. at
129. Upon a determination of factual insufficiency, a reviewing court should vacate a conviction and remand the cause for a
new trial. Id. at 133-34.

 Appellant makes the same argument in regard to factual sufficiency as he did with legal sufficiency. Having previously
reviewed and discussed the evidence under the legal sufficiency standard, we will not again recite the facts at this point. In
view of all the evidence in the trial, we conclude that the verdict is not so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Accordingly, we overrule Appellant's factual sufficiency issue.



Ineffective Assistance of Counsel

 In his third issue, Appellant contends that his trial counsel was ineffective. Specifically, Appellant contends that his
counsel failed to seek a continuance in order to review medical records; failed to seek appointment of a medical expert to
review records; failed to call witnesses Appellant wanted to testify; failed to obtain a controverting expert witness; and
failed to request a mistrial in regards to the verdict form. (1)

 To show ineffective assistance of counsel, appellant must demonstrate that (1) his trial counsel's performance was deficient
because it fell below an objective standard of reasonableness, and (2) there was a reasonable probability that, but for
counsel's errors, the result of the proceeding would have differed. Strickland v. Washington, 466 U.S. 668, 104 S. Ct.
2052, 80 L. Ed. 2d 674 (1984); Rodriguez v. State, 899 S.W.2d 658, 664 (Tex. Crim. App. 1995). "Whether the
Stricklandstandard has been met is to be judged by the 'totality of the representation,' rather than by isolated acts or
omissions of trial counsel, and the test is applied at the time of trial. The burden of proving ineffectiveness rests upon the
defendant by a preponderance of the evidence." Strickland, 466 U.S. at 689, 104 S. Ct. at 2064. Any allegation of
ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged
ineffectiveness. McFarland v. State, 928 S.W.2d 482 (Tex. Crim. App. 1996); Ex parte Cruz, 739 S.W.2d 53, 59 (Tex.
Crim. App. 1987). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the
ineffectiveness claim." McFarland, 928 S.W.2d at 500.

 The review of counsel's representation is highly deferential; we indulge a strong presumption that counsel's conduct falls
within a wide range of reasonable representation. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Appellant can rebut this
presumption by showing that (1) his attorney's representation was unreasonable under prevailing professional norms, and
(2) the challenged action was not sound trial strategy. See Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App.
1994);Howard v. State, 894 S.W.2d 104, 106 (Tex. App.-Beaumont 1995, pet. ref'd). We do not inquire into trial strategy
unless no possible basis exists in strategy or tactics for trial counsel's action. Johnson v. State, 614 S.W.2d 148, 152 (Tex.
Crim. App. 1981); Weeks v. State, 894 S.W.2d 390, 391 (Tex. App.-Dallas 1994, no pet.).

 In order to meet the first prong of the Strickland test, Appellant must not only specifically identify the deficiencies in
counsel's performance, but must identify the specific action which should have been made and provide authority in support
of his argument that the action would have been meritorious. See Valdes-Fuerte v. State, 892 S.W.2d 103, 112 (Tex.
App.-San Antonio 1994, no pet.) (citing Simms v. State, 848 S.W.2d 754, 758 (Tex. App.-Houston [1st Dist.] 1993, pet.
ref'd)). When the record contains no evidence of the reasoning behind trial counsel's action, we cannot conclude counsel's
performance was deficient. See Jackson, 877 S.W.2d at 771-72. A silent record does not require an appellate court to
speculate on the reason for trial counsel's decisions. A trial record is generally insufficient to address claims of ineffective
assistance of counsel in light of the strong presumption that trial counsel's conduct falls within the wide range of reasonable
professional assistance. A trial record is directed to the issues of guilt/innocence and punishment. It is difficult to review
Appellant's allegations of ineffective assistance of counsel from a record that does not specifically address those issues. 
The record in this case contains no evidence relating to the specific actions of which Appellant complains. There is nothing
to indicate to us that the actions of trial counsel were not trial strategy. Therefore, Appellant's third issue is overruled. 
However, recourse for Appellant's claim is still available.

 In order to effectively argue an issue of ineffective assistance of counsel, a record focused on the conduct of trial or
appellate counsel should be developed. Such a record is generally best developed in the context of a hearing held in
relation to an application for writ of habeas corpus. Id.at 771. The Court of Criminal Appeals has held that the general
doctrine that forbids an application for writ of habeas corpus following a direct appeal which has addressed the same issue
does not apply in these situations, and Appellant can resubmit his claim via an application for writ of habeas corpus. See
Oldham v. State, 977 S.W.2d 354, 363 (Tex. Crim. App. 1998); Ex Parte Torres, 943 S.W.2d 469, 475 (Tex. Crim. App.
1997). This would provide an opportunity to conduct a hearing dedicated to ascertaining the facts, circumstances, and
rationale behind counsel's decisions during the trial. Specifically, a hearing on an application for writ of habeas corpus
would allow trial counsel to explain his actions. Thompson v. State, 9 S.W.3d 808, 814-15 (Tex. Crim. App. 1999).

 Appellant raises the same contentions in a fifth issue where he again contends that trial counsel was ineffective. Again, the
record does not contain any evidence regarding counsel's action in any of these instances. We are unable to determine that
counsel's actions were not part of his trial strategy in a very difficult case. A silent record, as to counsel's thought
processes, does not require us to speculate on the reason for trial counsel's decisions. Ryan v. State, 937 S.W.2d 93, 98
(Tex. App.-Beaumont 1996, pet. ref'd). Appellant's fifth issue is overruled.



Jury Verdict Form

 In his fourth issue, Appellant complains that the trial court erred by rendering its judgment from an altered jury verdict
form. The record reflects that the word "injury" was omitted from the jury verdict form. The jury inserted the word
"injury" so that the sentence read, "WE, THE JURY, find the defendant, PATRICK McCuller, GUILTY, of the offense of
intentionally and knowingly causing serious bodily injury to a disabled individual as charged in the Indictment" (emphasis
added).

 The trial judge inquired of the presiding juror if the insertion of the missing word was her work and if "DAP," which was
written beside the inserted word, were her initials. The presiding juror responded in the affirmative and advised the judge
that the verdict was indeed unanimous. Counsel declined to poll the jury and did not request a mistrial; however, Appellant
did file a pro se motion for mistrial which the trial court denied. 

 Appellant contends the insertion rendered the verdict informal and that the court erred by not reducing the verdict to proper
form. He further contends the error was so egregious and created such harm as to deny him a fair and impartial trial. 
Appellant does not direct us to any authority holding that an insertion, such as the one here, renders a verdict informal, nor
does he cite to any cases holding that the acceptance of a verdict, such as the one here, is harmful error.

 The word "injury" was omitted from the verdict form. However, in the charge, the jury was instructed that in order to find
Appellant guilty of injury to a disabled person, it must find that Appellant caused serious bodily injury. The jury
recognized the omission in the verdict form and corrected it by inserting the proper term. The trial judge inquired if the
verdict was unanimous and if the handwriting was that of the presiding juror. She acknowledged that it was and that she
had initialed the insertion. All present in the courtroom were apprised of the mistake and the correction. The court's
discussion of the verdict form with the presiding juror reveals that the mistake and the correction were made known in open
court. Therefore, we hold that the trial court did not err in its handling of the situation and that Appellant was not harmed. 
See Durham v. State, 956 S.W.2d 62, 67 (Tex. App.-Tyler 1997, pet. ref'd). Appellant's fourth issue is overruled.

 The judgment of the trial court is affirmed.





 JIM WORTHEN 

 Justice



 



Opinion delivered November 28, 2001.

Panel consisted of Davis, C.J., Worthen, J., and Ramey, Retired Chief Justice, Twelfth Court of Appeals, Tyler, sitting by
assignment.










































DO NOT PUBLISH



1. This last contention is addressed in issue four.