**Affirmed and Memorandum Opinion filed August 27, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00569-CR

---

### ANDRE CHUARON HARLAND, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 248th District Court
Harris County, Texas
Trial Court Cause No. 1313915**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted Appellant Andre Chuaron Harland of aggravated assault against a public servant and assessed punishment at forty years' confinement. *See* Tex. Penal Code Ann. § 22.01(b)(1). Appellant challenges his conviction and sentence in two issues, contending that the (1) trial court erred by denying his motions to suppress and (2) his trial counsel rendered ineffective assistance. We affirm.

# I.    BACKGROUND

## A.    The Aggravated Assault

Houston Police Department (HPD) Officers Ben LeBlanc and Justin Williams were driving their patrol vehicle in the early evening hours on July 20, 2011. It was a clear day and still light outside. The officers observed a car that matched the description of a car listed in an aggravated robbery—a tan or gold Jaguar with Louisiana license plates. When the Jaguar stopped at a red light, the officers turned on their patrol vehicle's flashing lights, got out of the vehicle, and began walking up to the Jaguar. The Jaguar pulled away, made a U-turn, and sped off at a high rate of speed. The officers returned to their vehicle and pursued. Officers Lopez and Sanders joined the pursuit in a second patrol vehicle.

Soon thereafter, the Jaguar pulled into an apartment complex, with both patrol vehicles following. The Jaguar struck several parked vehicles, and the driver leapt from the Jaguar. LeBlanc and Williams testified at the suppression hearing that when the driver got out of the Jaguar, the officers were about twenty feet from the driver. The driver looked in their direction, and LeBlanc and Williams were able to get a good look at his face. Lopez testified that he and Sanders were about sixty feet away from the man at that time. Lopez got a good look at the man's face, but Sanders did not.

The man began running away. The officers got out of their vehicles and gave chase, with LeBlanc leading the way by some distance. LeBlanc was within ten to twenty feet from the man, who "peeped back a couple more times" to see where LeBlanc was. After running for about fifty feet, the man scaled a wrought-iron fence. LeBlanc and others saw a handgun in the man's left hand. LeBlanc drew his pistol and yelled, "Gun, gun, gun," to notify the other officers that the man was armed. As the man landed on the other side of the fence, he looked at

2

LeBlanc again. The man began to get up from a crouched position, and he raised the gun and pointed it towards LeBlanc. LeBlanc fired one shot in the man's direction and then took cover. While running away, the man stumbled and lost one of his white shoes. The HPD recovered the shoe, but the man escaped.

## B.    Photo Spread Identifications

All of the witnesses who gave the HPD a description of the suspect that evening, including the officers and at least one resident of the apartment complex, described the suspect as a being a "light-skinned" or "light-complected" African–American man. HPD Sergeant William Bush testified at the suppression hearing that HPD's investigation revealed appellant was "identified by the girlfriend as the person she had—she allowed the vehicle to go to." Bush explained that Officer Robles created a photo spread with six images using appellant's driver's license photograph and five other "randomly selected" driver's license photographs.[1]

All of the men depicted in the photo spread are African–Americans with hairstyles and facial features that are not greatly dissimilar from appellant's. Testifying about the photo spread, Bush noticed that appellant was "light-complected" but that another man in the photo spread had a "similar complexion." He explained, "[E]verybody's going to have a different complexion."

On the day after the incident, Bush showed the photo spread to LeBlanc and Sanders at different times and locations.[2] LeBlanc picked appellant's photograph; Sanders did not pick anyone from the photo spread. Also on the day after the incident, Officer Christopher Sturdivant showed the photo spread to Lopez and

---

[1] Robles did not testify at the suppression hearing or at trial.

[2] Bush admonished LeBlanc that the individuals in the photo spread may or may not be involved in the incident, that LeBlanc was under no obligation to pick anyone from the photo spread, that the investigation would continue regardless of whether LeBlanc picked anyone, and that if LeBlanc picked anyone, he could not tell anyone else he made a selection.

Williams at different times and locations.[3]  Both Lopez and Williams picked appellant's photograph.  HPD Sergeant Thomas Biggs showed the photo spread to several witnesses, including Marvin Mosely, a resident at the apartment complex who saw most of the incident.[4]  Mosely picked appellant's photograph.  Another witness testified at trial that an officer showed her a photo spread, and she was unable to identify anyone.

## C.    Motions to Suppress and Trial Court's Rulings

Appellant's trial counsel filed motions to suppress the photographic identifications and any in-court identifications.  At trial, outside the jury's presence, the court held several hearings on the motions and made rulings as to each witness after the relevant witnesses testified during the hearings.  The trial court overruled appellant's motions for each identification witness.[5]  Thus, the jury heard evidence that LeBlanc, Williams, Lopez, and Mosely identified appellant during the photo spread identifications, and the trial court admitted each photo spread, signed by the respective witnesses.[6]

---

[3] Sturdivant admonished the officers that they were not required to pick anyone in the photo spread, the investigation would continue regardless of whether they picked anyone, they should not speak with anyone about anything having to do with the photo spread, the suspect may or may not be in the photo spread, and sometimes pictures are dated and it may or may not look exactly like the people do at the current time.

[4] Biggs admonished Mosely that the person may or may not be in the photo spread, he was not under any obligation to pick anyone, it would be fine if he did not recognize the person, and that hairstyles can change.

[5] On appeal, appellant contends that the trial court "only made a ruling effecting the identification of Officer LeBlanc," and that appellant's trial counsel failed to "fight or even object to the suggestive photo lineup with other witnesses."  The State, citing the record, contradicts appellant's assertion.  Our review of the record confirms that the trial court made separate rulings admitting the evidence after voir dire hearings for every identification witness.

[6] After the trial court had denied appellant's motions to suppress and allowed the identification witnesses to testify in front of the jury, appellant's trial counsel said there was "no objection" to the photo spread exhibits.

4

## D.    In-Court Identifications

LeBlanc, Williams, and Lopez made in-court identifications of appellant as the driver of the gold Jaguar.  The three officers testified similarly that their identifications of appellant at trial were based on what they remembered seeing on the day of the incident.  They testified that they would have recognized appellant even if they had not seen the photo spread on the following day.  Sanders, Mosely, and another witness could not identify appellant at trial.

## E.    DNA Evidence

After appellant had been arrested, Bush collected a saliva sample for DNA testing.  HPD Crime Lab DNA Analyst Clay Davis testified at trial that he tested the white sneaker recovered from the crime scene for DNA.  Davis explained that he could not exclude appellant as a contributor to the DNA samples found in the shoe, and the probability of that occurring for a randomly selected African–American was 1 / 1600.

## F.    Conviction and Punishment

The jury found appellant guilty, and appellant pleaded "true" to two enhancements.  Harris County Sheriff's Office Deputy James Dalrymple testified during the punishment phase about appellant's criminal history by comparing appellant's fingerprint to those from judgment and sentence documents and pen packets, and the trial court admitted these documents into evidence.  Appellant's criminal history included a misdemeanor evading arrest, a misdemeanor criminal trespass, two misdemeanors for possession of marijuana, a felony possession of cocaine, a felony possession of codeine, a felony possession of cocaine with the intent to deliver, two additional felonies for possession of a controlled substance,

and a felony for being a felon in possession of a weapon. Appellant also testified at the punishment hearing.

The jury assessed punishment at forty years' confinement, and the trial court sentenced appellant accordingly. Appellant did not file a motion for new trial.

## II.    MOTIONS TO SUPPRESS

In his first issue, appellant contends the trial court erred by denying his motions to suppress Officer LeBlanc's pretrial and in-court identifications of appellant. Appellant contends the photo spread was impermissibly suggestive and that the in-court identification was the product of this earlier improper identification. Appellant argues that the photo spread was impermissibly suggestive because appellant was the only person depicted in the photo spread who could be described as "light skinned" or of "light complexion."

Following *Rogers v. State*, whether the photo spread identification procedure in this case was impermissibly suggestive is a mixed question of law and fact that does not turn on an evaluation of witnesses' credibility and demeanor, and we review such questions de novo. *See* 402 S.W.3d 410, 417 (Tex. App.—Houston [14th Dist.] 2013, pet. filed) (citing *Loserth v. State*, 963 S.W.2d 770, 773 (Tex. Crim. App.1998)).[7]

A pretrial identification procedure "may be 'so unnecessarily suggestive and conducive to irreparable mistaken identification' as to be a denial of due process of law." *Foster v. California*, 394 U.S. 440, 442 (1969) (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967)). Further, an in-court identification is inadmissible when

---

[7] Mixed questions turn on an evaluation of credibility and demeanor "when the testimony of one or more witnesses, if believed, is *always* enough to add up to what is needed to decide the substantive issue." *Loserth,* 963 S.W.2d at 773 (citing *Miller v. Fenton,* 474 U.S. 104, 114–15, (1985)).

it has been tainted by an impermissibly suggestive pretrial photographic identification. *Luna v. State*, 268 S.W.3d 594, 605 (Tex. Crim. App. 2008).

The inquiry is twofold. First, we must determine whether the pretrial identification procedure was impermissibly suggestive. *Barley v. State*, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995). If so, then we must determine whether that suggestive procedure gave rise to a substantial likelihood of irreparable misidentification; if not, we do not reach the second inquiry. *Id.* at 33–34; *Rogers*, 402 S.W.3d at 419.

We do not reach the second inquiry in this case because we conclude that the pretrial identification procedure was not impermissibly suggestive. "Suggestiveness may be created by the manner in which the pre-trial identification procedure is conducted, for example by police pointing out the suspect or suggesting that a suspect is included in the line-up or photo array." *Barley*, 906 S.W.2d at 33. "Or it may also be created by the content of the line-up or photo array itself if the suspect is the only individual closely resembling the pre-procedure description." *Id.* For example, a pretrial identification may be impermissibly suggestive when the defendant is the only person with a particular race depicted in a photo spread. *See Tapley v. State*, 673 S.W.2d 284, 286 (Tex. App.—San Antonio 1984, pet. ref'd) (appellant was the only Anglo male with fair complexion and all others were Mexican–American males). This second type of suggestiveness is the heart of appellant's complaint.

A pretrial identification procedure may be suggestive *without* violating a defendant's right to due process, but the procedure may not be *impermissibly* so. *See id.* at 34. Although the better practice may be to use photographs of individuals whose every feature matches the pre-identification description, neither

7

due process nor common sense requires such exactitude. *See, e.g.*, *Buxton v. State*, 699 S.W.2d 212, 216 (Tex. Crim. App. 1985); *Rogers*, 402 S.W.3d at 418.

Appellant cites no factually analogous case to support his argument that this photo spread was impermissibly suggestive, and we have found none. When there are only a few minor discrepancies—including minor variations in skin tone or complexion—among other substantially similar features of individuals depicted in a photo spread, courts have held repeatedly that pretrial identifications were not impermissibly suggestive. *See Buxton*, 699 S.W.2d at 216 (not impermissibly suggestive when the defendant claimed that only one other dark-complexion African–American was included in the photo spread, and witnesses described the suspect as "very dark"); *Rogers*, 402 S.W.3d at 417, 419 (defendant claimed that three of the six photos could be rejected easily because of skin color variations; "Although the complexions of some of the individuals included in the array varied from that of Rogers, minor discrepancies among lineup participants will not render a lineup impermissibly suggestive."); *Perez v. State*, 41 S.W.3d 712, 720–21 (Tex. App.—Corpus Christi 2001, no pet.) (defendant claimed he was the only "light-skinned" man in the photo spread and the other five were "coffee-colored" men; but the skin color differences were "minimal," and the photo spread consisted of six head shots of Hispanic males, all of whom were young men of comparable age and facial features with short, dark hair); *see also Wilson v. State*, 15 S.W.3d 544, 553 (Tex. App.—Dallas 1999, pet. ref'd) (no ineffective assistance for failure to object to photo spread identification when the defendant claimed that of the men in the photo spread, "his skin is the darkest, his head is the largest, the background is the lightest, and his picture is the only one without a placard showing"; the court found no unnecessarily suggestive procedure because "all the men are black, bald, and appear to be approximately the same age"); *Clay v. State*, 702 S.W.2d 747, 749

(Tex. App.—San Antonio 1985, no pet.) ("Even if the other photographs portrayed individuals who apparently had different shades of skin color, that would not by itself render the lineup impermissibly suggestive."); *cf. Ward v. State*, 474 S.W.2d 471, 476 (Tex. Crim. App. 1971) (photo spread was not impermissibly suggestive when the defendant was the only person portrayed with an "Afro hair style," and that was the "one feature noted by the witnesses in their general description").

Any suggestiveness caused by skin color variations in this case was minimal, particularly given that all six men in the photo spread were of the same race; had similar hairstyles, facial hair, and clothing; and the photos were similar sizes and taken in front of similar backgrounds.[8] *See Barley*, 906 S.W.2d at 33–34; *Buxton*, 699 S.W.2d at 216. Having reviewed the photo spread and the testimony concerning it, we conclude that the pretrial identification was not impermissibly suggestive, and the trial court did not err by denying appellant's motions to suppress.

Appellant's first issue is overruled.

## III.   INEFFECTIVE ASSISTANCE

In his second issue, appellant contends that his trial counsel rendered ineffective assistance by failing to (1) present a motion for investigator funds to the trial court; (2) seek or obtain expert testimony to controvert the State's DNA expert; (3) prepare or present any witnesses or adduce mitigation evidence of any kind; (4) timely file motions for discovery or obtain discovery pretrial; (5) object to the admission of identification testimony from witnesses other than LeBlanc; (6) make any objections during trial; (7) object to the State's untimely notice of extraneous offenses and designation of experts; (8) request a continuance to

---

[8] The record contains no evidence of any discrepancies concerning age, height, or weight.

investigate the extraneous offenses and challenge the State's expert; and (9) object to the photo spread exhibits.

To prevail on an ineffective assistance claim, an appellant must show that (1) counsel's performance was deficient by falling below an objective standard of reasonableness; and (2) counsel's deficiency caused the appellant prejudice—there is a probability sufficient to undermine confidence in the outcome that but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010). An appellant must satisfy both prongs by a preponderance of the evidence; failure to demonstrate either deficient performance or prejudice will defeat a claim of ineffectiveness. *Perez*, 310 S.W.3d at 893. When one of the prongs is dispositive, we need address only that prong on appeal. *See Seamster v. State*, 344 S.W.3d 592, 594 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

Trial counsel's explanation for the allegedly deficient conduct is usually a crucial issue of fact that must be elicited in a trial court. *Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005). "Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation." *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). "A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim." *Id.* "To overcome the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quotation omitted). If an appellant cannot show in the record that counsel's conduct was not the product of a strategic decision, "a reviewing court should

presume that trial counsel's performance was constitutionally adequate unless the challenged conduct was so outrageous that no competent attorney would have engaged in it." *State v. Morales*, 253 S.W.3d 686, 696–97 (Tex. Crim. App. 2008) (quotation omitted).

The appellate record contains no explanations for trial counsel's allegedly deficient performance, and thus, we cannot conclude that trial counsel performed deficiently. *See, e.g.*, *Lopez v. State*, 343 S.W.3d 137, 143–44 (Tex. Crim. App. 2011) (no deficient performance on silent record when counsel failed to object to witness testimony); *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003) (no deficient performance on silent record when counsel failed to seek a continuance to obtain expert testimony); *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983) (explaining that failure to call witnesses is irrelevant absent a showing that witnesses were available and appellant would have benefited from their testimony); *Wert v. State*, 383 S.W.3d 747, 756–57 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (no deficient performance for failure to file pretrial discovery motions when the record failed to show that any evidence was not disclosed or there was any evidence unknown and helpful that could have been uncovered by filing a discovery motion); *see also Blackmon v. State*, 80 S.W.3d 103, 108 (Tex. App.—Texarkana 2002, pet. ref'd) (no deficient performance when counsel failed to object to lack of notice of extraneous offenses; the record did not clearly indicate that counsel did not receive notice).

Appellant has not demonstrated that any of the alleged conduct was so outrageous that no competent attorney would have engaged in it. Not only is the record silent on many of appellant's claims, but the record actually ***contradicts***

11

several of his claims.[9]  And on appeal, appellant makes legal conclusions regarding some alleged acts of ineffectiveness without citing authority.[10]

Further, even assuming for argument's sake that counsel was deficient for stating "no objection" to the admission of the photo spread exhibits (given that misidentification was counsel's primary defensive theory),[11] appellant failed to demonstrate prejudice because, as we held above, the photo spread was not impermissibly suggestive.  *See Ex parte Moore*, 395 S.W.3d 152, 157 (Tex. Crim. App. 2013) (although counsel performed deficiently by stating "no objection" to evidence covered by a motion to suppress, thus waiving error to admission of the evidence with no strategic reason for doing so, applicant failed to establish prejudice because he did not demonstrate that the trial court erred in denying the motion to suppress).

Accordingly, appellant failed to prove that trial counsel rendered ineffective assistance.  Appellant's second issue is overruled.

---

[9] Appellant's motion for investigator funds, found in the clerk's record, includes a handwritten note "Granted - $600," is dated with a district court stamp, and is signed with the initials of the trial judge.  Further, as we noted previously, appellant's motions to suppress were not limited to LeBlanc, and the trial court made rulings on each identification witness.  Finally, counsel called Harland as a witness during punishment to present mitigation testimony.

[10] For example, appellant cites no authority to demonstrate that the State's notices of extraneous offenses and experts were untimely.

[11] The State agrees with appellant's assertion that trial counsel waived error by stating "no objection" when the State offered into evidence the photo spread exhibits.

## IV.    CONCLUSION

Having overruled both of appellant's issues, we affirm the trial court's judgment.


/s/    Sharon McCally
Justice

Panel consists of Justices Brown, Christopher, and McCally.

Do Not Publish — Tex. R. App. P. 47.2(b).

13