Fred Kennedy BLACKMON, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–01–00157–CR.

Court of Appeals of Texas, Texarkana.

Submitted Jan. 25, 2002.

Decided May 15, 2002.

Gary M. Polland, Houston, for appellant.

Lori DeAngelo Fix, Asst. Dist. Atty., Houston, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Fred Kennedy Blackmon appeals his conviction for aggravated sexual assault of a child. A jury convicted Blackmon, and the trial court assessed his punishment, enhanced by a prior felony conviction, at sixty years' imprisonment.

■ Blackmon first contends the evidence is legally and factually insufficient to support his conviction. In reviewing the legal sufficiency of the evidence, we determine whether, after viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Lane v. State*, 933 S.W.2d 504, 507 (Tex.Crim.App. 1996). We evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim.App.1993).

■ When we review the factual sufficiency of the evidence, we determine whether a neutral review of all the evidence, both for and against the verdict, demonstrates that the proof of guilt is so weak as to undermine confidence in the jury's determination, or that the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim.App.2000); *see also Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). Accordingly, we reverse the jury's determination only to avoid a manifest injustice. *Johnson v. State*, 23 S.W.3d at 12. Otherwise, we must give due deference to the fact-finder's determinations concerning the weight and credibility of the evidence.

The complainant, A.B., who was fourteen years of age at the time of trial, testified that Blackmon, her stepfather, assaulted her late one night at the family's duplex when she was twelve years old. She testified she was sleeping on a bed in the living room with her younger sister and her two younger brothers. Blackmon woke her brothers and told them to sleep in another room.

A.B. testified Blackmon offered to give her money to let him have sexual relations with her, but she refused. She testified Blackmon put some wadded paper under her pillow (which she testified was intended to make her think he was giving her money), then began feeling under her nightgown, touched her breast, pulled down her underpants, and penetrated her vagina with his penis. She testified her younger sister was in the bed with them, but did not awaken.

On cross-examination, A.B. admitted she failed to disclose in an initial interview with police that Blackmon had penetrated her sexual organ with his sexual organ. She disclosed this information for the first time in a second interview. There was also testimony that A.B. reported that the assault occurred in the summer of 1999, stated later the assault occurred in January 1999, and at trial testified it occurred in February 1999.

Brenda Blackmon, A.B.'s mother, testified that A.B. told her Blackmon "tried to have sex with her" and touched her on her breasts. Brenda Blackmon also testified:

Q. Did [A.B.] talk about [Blackmon] putting his private part in her private part?

A. Yes, she did.

Q. What did she say about that?

A. She say [sic] he tried to, you know, had her turn over and told her to turn over and be still and don't say nothing while putting it in.

Dr. Margaret McNeese, a physician who specializes in child abuse and child sexual abuse cases, testified she examined A.B. McNeese testified that A.B. said her stepfather touched her on her breasts and her vagina with his hands and tried to touch her with his penis. McNeese testified A.B. had "a deep transection" of her hymen, i.e., a laceration of her hymen that never completely healed. She testified these physical findings were "highly suggestive of vaginal penetration."

J.B., A.B.'s brother, who was thirteen at the time of trial, testified he saw Blackmon assault A.B. on two different occasions. The first time was late at night when A.B. was sleeping on the floor in the front bedroom and J.B. was sleeping in another room. J.B. testified he got up to go to the bathroom and saw Blackmon crawl on top of A.B., who was sleeping on her stomach. He testified he saw Blackmon "pull his stuff," i.e., his penis, from his boxers.

The second time was also late at night when A.B. was sleeping in the back room with her sister and another brother, and J.B. was sleeping in the living room. J.B. testified he got up to get a drink of water, went into the back room to sleep with his sisters and brother, and saw Blackmon come into the room and get on top of A.B., who was lying on her stomach. He testi-

fied·Blackmon began "hunching," i.e., having sex with A.B. He also testified A.B. screamed, but not loud enough to awaken the other members of the family.

Under the indictment in this case, the State was required to prove that Blackmon intentionally or knowingly caused his sexual organ to contact and penetrate A.B.'s sexual organ, and that A.B. was a child younger than fourteen years of age. *See* TEX. PEN.CODE ANN. § 22.021(a)(1)(B)(i), (a)(1)(B)(iii), (a)(2)(B) (Vernon Supp.2002). Viewing the evidence in the light most favorable to the prosecution, we conclude there is legally sufficient evidence to support Blackmon's conviction. A.B. testified that Blackmon penetrated her sexual organ with his sexual organ. A.B.'s mother testified A.B. made an outcry that was substantially the same as her testimony. McNeese testified that the condition of A.B.'s hymenal region was highly suggestive of vaginal penetration. Based on this evidence, a rational jury could have concluded beyond a reasonable doubt Blackmon committed the offense.

There is also factually sufficient evidence. Blackmon points to A.B.'s initial statements to police, which failed to report penetration, and to her mother's testimony that A.B. told her Blackmon *tried* to penetrate her. He also points to A.B.'s inconsistent statements to police and at trial regarding when the assault occurred.

As the exclusive judge of the weight and credibility of the evidence, the jury could have chosen to believe A.B.'s testimony at trial that Blackmon actually penetrated her vagina with his penis. There was evidence presented that child sexual assault victims do not always disclose the full extent of the abuse in their initial interviews. Further, the jury could have given great weight to McNeese's testimony that A.B.'s hymenal region showed injuries consistent with penetration.

■ Blackmon next contends he was denied due process of law, due course of law, and his confrontation rights by the State's failure to disclose J.B.'s testimony under TEX.R. EVID. 404(b). Blackmon's theory is that J.B. testified to events different from those to which A.B. testified, making the events that J.B. testified about qualify as extraneous offenses, and that he, Blackmon, was therefore entitled to notice of these extraneous offenses.

■ Evidence of other crimes, wrongs, or acts is inadmissible to prove a person's character, but such evidence is admissible for other purposes, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX.R. EVID. 404(b). On timely request by the accused in a criminal case, the state must give reasonable notice in advance of the trial of its intent to introduce evidence other than that arising from the same transaction.

The State contends J.B. testified to the same events as A.B.; however, a close examination of the testimony reveals that each witness testified to distinct events. A.B. testified to an assault that occurred on the bed in the living room when Blackmon sent the boys into another room to sleep. J.B. testified to one assault that occurred on the floor of the front bedroom and to another assault that occurred on the bed in the back bedroom while he was present in the bed.

Nevertheless, for an appellant to raise an issue on appeal, the record must show that the complaint was made to the trial court and that the trial court ruled on the complaint. TEX.R.APP. P. 33.1(a). In this case, the record does not show that Blackmon objected to the State's failure to give him notice of J.B.'s testimony under Rule 404(b). Therefore, the issue is not preserved for our review.

■ Blackmon also contends that he received ineffective assistance of counsel.

The standard for testing claims of ineffective assistance of counsel is set out by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted for Texas constitutional claims in *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App.1986). To prevail on a claim of ineffective assistance of counsel, Blackmon must prove by a preponderance of the evidence (1) that his attorney's representation fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. 2052; *Tong v. State,* 25 S.W.3d 707, 712 (Tex.Crim.App.2000), *cert. denied,* 532 U.S. 1053, 121 S.Ct. 2196, 149 L.Ed.2d 1027 (2001).

To meet this burden, Blackmon must prove that his attorney's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for his attorney's deficiency, the result of the trial would have been different. *Strickland v. Washington,* 466 U.S. at 688, 694, 104 S.Ct. 2052; *Tong v. State,* 25 S.W.3d at 712. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. 2052; *Tong v. State,* 25 S.W.3d at 712.

■ Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App. 1999). Failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim.

Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Strickland v. Washington,* 466

U.S. at 689, 104 S.Ct. 2052; *Tong v. State*, 25 S.W.3d at 712. We will not second-guess through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Blott v. State*, 588 S.W.2d 588, 592 (Tex.Crim.App.1979). The fact that another attorney, even Blackmon's attorney on appeal, might have pursued a different course of action does not necessarily indicate ineffective assistance. *Harner v. State*, 997 S.W.2d 695, 704 (Tex.App.-Texarkana 1999, no pet.).

Blackmon contends his counsel was deficient for failing to object to J.B.'s testimony under Rule 404(b) based on the State's failure to give him notice. The State contends there is no indication in the record Blackmon requested notice of its intent to introduce J.B.'s testimony under Rule 404(b). It is true that the record does not contain Blackmon's request for notice of the State's intent to introduce extraneous offenses under Rule 404(b). However, the record does contain the State's supplemental notice of intention to use extraneous offenses under Rule 404(b), in which it disclosed its intent to introduce numerous extraneous offenses, but not those introduced in J.B.'s testimony.

 If the State gave its notice in response to Blackmon's request, then obviously it was under a duty to disclose every extraneous offense on which it intended to rely at trial. If the State gave its notice voluntarily, then it had a duty to provide information that was complete. *Webb v. State*, 995 S.W.2d 295 (Tex.App.-Houston [14th Dist.] 1999, no pet.), is distinguishable. In *Webb* the court of appeals held that a defendant who fails to request notice under Rule 404(b) is precluded from complaining about the notice received. However, *Webb* involved a complete lack of notice rather than the notice of certain offenses but not others, as in this case.

 It is not clear from the record whether Blackmon's attorney had notice of the State's intent to introduce the extraneous offenses contained in J.B.'s testimony. Rule 404(b) does not absolutely require the State to provide in writing its notice of its intent to use extraneous offenses, *Chimney v. State*, 6 S.W.3d 681, 696 (Tex.App.-Waco 1999, pet. filed), though the State's opening of its file containing offense reports detailing extraneous offenses is insufficient notice of its intent to introduce these offenses at trial. *Buchanan v. State*, 911 S.W.2d 11, 15 (Tex.Crim.App.1995).

As mentioned previously, allegations of ineffective assistance of counsel must be firmly founded in the record. *Thompson v. State*, 9 S.W.3d at 813. Without a clear indication in the record that Blackmon's counsel did not receive notice of the State's intent to introduce the extraneous offenses contained in J.B.'s testimony, we cannot say counsel's performance was deficient. Therefore, we overrule Blackmon's contention and for the reasons stated affirm the trial court's judgment.

The judgment is affirmed.