COURT OF APPEALS















COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL PASO, TEXAS

 

EDWARD NAJAR a/k/a EDUARDO
NAJAR,     )

                                                                              )              
No.  08-04-00285-CR

Appellant,                          )

                                                                              )                     Appeal from the

v.                                                                           )

                                                                              )                 
243rd District Court

THE STATE OF TEXAS,                                     )

                                                                              )            
of El Paso County, Texas

Appellee.                           )

                                                                              )               
(TC# 20030D02422)

                                                                              )

 

 

O
P I N I ON

 

Edward Najar was
indicted for aggravated sexual assault of a child (Count I) and indecency with
a child (Count II).  He plead not guilty
to each offense and was tried before a jury. 
The jury was unable to reach a verdict for Count I, and upon Appellant=s request, the trial court granted a
mistrial as to that count.  The jury,
however, found Appellant guilty of Count II, indecency with a child, and
assessed punishment at 6 years=
imprisonment.  In ten issues, Appellant
complains of erroneous evidentiary rulings, jury charge error, and ineffective
assistance of counsel.  We will affirm.








Nine-year-old L.B.
testified that Appellant was her mother=s
boyfriend.  When she first met Appellant,
he would be mean to her and her siblings and was very strict.  In her testimony, L.B. described several
incidents of sexual abuse.  The first
incident occurred on a Saturday or Sunday morning.  Appellant woke her up early and drove her to
Carl=s Jr.
restaurant.  L.B. ate a hamburger and
then Appellant drove her to the desert to look for bunnnies.  On the drive home, L.B. was sleepy and
attempted to sleep in the truck, but when Appellant was stopped at a red light,
he unzipped her pants, pulled her underwear to the side, and put his finger
inside her vagina.  L.B. did not tell her
mother because she was afraid of Appellant. 
The next incident of a Abad
touch@ occurred
at Appellant=s
house.  L.B. had been playing with
Appellant=s dog and
the dog began scratching her stomach. 
Appellant went into the house and got a scratch cream.  Appellant lifted L.B.=s
shirt and applied the cream to the scratches, but when he was finished, he
placed more cream on his hands and started rubbing L.B.=s
breasts.  L.B. testified that she had no
scratches on her breasts.

According to L.B.,
the third sexual encounter occurred while her mother was at the store.  Appellant was in her mother=s bedroom, sitting on the edge of the
bed.  As L.B. was walking by the room,
Appellant grabbed her by the hand.  After
telling L.B. that she should exercise and not be overweight, Appellant told
L.B. that he knew some techniques that could help her lose weight.  Appellant told L.B. to lie on her back on the
floor and do a back bend.  As L.B. did
what he had asked, Appellant grabbed her legs and put them around his waist.  L.B. could not move in this position.  Appellant unbuttoned L.B.=s shirt, unzipped her pants, pulled
down her underwear, and inserted his finger into her vagina.  Again, L.B. did not tell her mother because
she was afraid of Appellant.








L.B. testified to
three more Abad touch@ incidents between her and
Appellant.  On New Year=s Eve, L.B. asked Appellant to read her
a book about trolls and Appellant told L.B. to sit on his lap.  While reading, Appellant started rubbing her
back, touching her inner thigh, knees, and bottom.  Another incident occurred while L.B.=s mother was at work and her brother
was in the living room watching the television. 
L.B. was passing by her mother=s
room when Appellant asked L.B. if she wanted to play a game with him.  L.B. said yes and engaged in a word game with
Appellant until he said it was boring and that they should do something
else.  Appellant and L.B. were sitting on
the bed.  Appellant spread out his legs
and had L.B. sit with her back facing his stomach, in between his legs.  Appellant then laid down on the bed, picked
up L.B. and turned her so that she was facing him.  After hugging her real tight, Appellant
started kissing her on the lips and using his tongue inside her mouth.  After about thirty-five seconds, Appellant
picked L.B. up and put her on the ground. 
Appellant got up and went into the bathroom, but then returned and
reminded L.B. that her mother wanted her to take a shower.  Appellant told her they should shower
together to conserve water.  When L.B.
refused, Appellant offered her a dollar to shower with him.  Appellant asked repeatedly and after L.B.
kept refusing, he slapped her on the bottom and gave her a dollar. 

In the sixth and
final encounter, L.B. was watching AAmerica=s Funniest Home Videos@ in the living room when Appellant
walked in and started touching her shoulders and rubbing her back.  L.B.=s
mother was in the bathroom, which was about ten feet away.  L.B.=s
mother opened the bathroom door and caught Appellant as he was rubbing L.B.=s bottom.  L.B.=s
mother yelled at Appellant, told L.B. to wake up her brother and go play
outside.  L.B.=s
mother later asked her if Appellant had touched her before, and L.B. said yes.








L.B.=s brother, R.B., testified that he
witnessed Appellant touching L.B.=s
bottom while his mother was in the shower getting ready for work.  R.B. recalled that Appellant would often call
L.B. to him while his mother showered. 
R.B. witnessed the incident in which Appellant ask L.B. if she wanted to
take a shower with him.

At trial, Anna
Barrera, L.B.=s mother,
explained that Appellant lived with her and her three children for over three
years and moved out after he hit her oldest son.  Ms. Barrera, however, continued her
relationship with Appellant and he visited her house every day.  She recalled that in the fall of 2001,
Appellant=s
behavior toward L.B. changed from being very strict to addressing L.B. in a
more loving way.  Ms. Barrera also
testified about the sixth incident, stating that she caught Appellant touching
L.B.=s breast
and bottom while the two were in the living room watching television.

Cynthia Aguilar,
an investigator for Child Protective Services, interviewed L.B. and during the
preliminary interview, L.B. made an outcry against Appellant and her eldest
brother.  At a subsequent interview at
the Child Advocacy Center,
L.B. described to Ms. Aguilar how Appellant would open his legs when she sat on
his lap, had touched her chest underneath her shirt, and had fondled her
vaginal area.  

In defense,
Appellant called Maria Munoz, the family babysitter.  On several occasions, Ms. Munoz asked L.B.
about the allegations against Appellant. 
In response to her question about whether Appellant had ever done
anything to her, L.B. replied no.  One
other time, Ms. Munoz had taken L.B. to church and L.B. started crying.  She told Ms. Munoz that she did not want to
accuse Appellant because he had not done anything to her, but her mother wanted
her to accuse him, even though it was her brother who had abused her.








Appellant
testified in his defense.  Appellant
stated that he first became aware of the sexual abuse allegations when L.B.=s mother called him from work in
November or December of 2002.  Appellant
was later contacted by the police department and was asked to give a
statement.  During the interview, Appellant
denied the allegations against him, but he was arrested about six months later
on the charges.  At trial, Appellant
denied ever touching L.B.=s
private parts and only touched her bottom on the rare instances when he spanked
her to get her to move from in front of the television.  Appellant denied all the incidents that L.B.
testified to, including the Carl=s
Jr. incident, and the dog scratching incident. 
Appellant admitted that he had made the comment to L.B. about showering
together, but explained that earlier that day he had been to a meeting at his
company, El Paso Water, where they had discussed conserving water by having two
people showering at once.  Later at home,
he and L.B. both wanted to use the shower first, so he jokingly suggested they
shower together.  R.B. was watching
television and could not have heard that conversation.  As the alleged incident that Ms. Barrera
witnessed, Appellant testified that he was tickling L.B., not grabbing her
breasts or bottom.

In his first four
issues, Appellant argues that the trial court: 
(1) erred in admitting extraneous offense evidence of which the State
had failed to give notice; (2) failed to give a contemporaneous limiting
instruction when admitting the extraneous offense evidence; (3) failed to
include an instruction in the charge that such evidence should not be
considered unless the jury believed the evidence beyond a reasonable doubt; and
(4) failed to include a jury charge instruction that such evidence could only be
considered for limited purposes only.








In his brief,
Appellant fails to designate which sexual abuse allegations testified to were
extraneous offenses and which were not.  AAn extraneous offense is defined as any
act of misconduct, whether resulting in prosecution or not, that is not
shown in the charging papers.@  [Emphasis in original].  Rankin v. State, 953 S.W.2d 740, 741
(Tex.Crim.App. 1996).  Our review of the record
reveals that of the sexual incidents testified to by the complainant and
eyewitnesses, only two incidents involved sexual contact without alleging
touching of the complainant=s
breasts or digital penetration as alleged in the indictment.  We surmise that these two incidents are the
complained-of extraneous offenses.  See
Rodriguez v. State, 104 S.W.3d 87, 91 (Tex.Crim.App. 2003)(evidence of
multiple occurrences of acts alleged in the indictment are not evidence of
extraneous offenses and appellant=s
remedy is to require the State to elect the occurrence on which it seeks to
rely for conviction).

With regard to
Appellant=s first
two complaints, Appellant did not object to the State=s
failure to give him notice of alleged extraneous offenses and he did not
request a contemporaneous limiting instruction when the complained-of evidence
was admitted.  These complaints were not
preserved for appellate review.  See Tex.R.App.P. 33.1(a)(1); see also Tex.R.Evid. 105(a)(in absence of
limiting instruction request, the court=s
action in admitting such evidence without limitation shall not be a ground for
complaint on appeal); Blackmon v. State, 80 S.W.3d 103, 107
(Tex.App.--Texarkana 2002, pet. ref=d)(no
objection to State=s failure
to give notice of extraneous offenses waives issue for appellate review).

Appellant
complains that he was entitled to an instruction that the jury could consider
evidence of extraneous offense for limited purposes only.  As noted above, Appellant did not request a
limiting instruction when the alleged extraneous offense evidence was admitting
at trial.  Because such evidence was
admitted for all purposes, the trial court did not err by not issuing a
limiting instruction in the jury charge regarding that evidence.  See Hammock v. State, 46 S.W.3d 889,
895 (Tex.Crim.App. 2001)(when a party does not request a limiting instruction
at the first opportunity, evidence is admitted for all purposes).








Appellant also
complains that he was entitled to a reasonable doubt instruction regarding
extraneous offense evidence in the guilt-innocence jury charge.  Assuming, without deciding that Appellant was
entitled to a sua sponte reasonable doubt instruction, we nevertheless
find that Appellant did not suffer egregious harm.  See Allen v. State, 180 S.W.3d 260,
266 n.21 (Tex.App.--Fort Worth 2005, no pet.)(acknowledging split in
intermediate courts as to whether a sua sponte reasonable doubt
instruction for extraneous offense evidence is required in the guilt-innocence
charge); see also Rodriguez v. State, 137 S.W.3d 228, 231
(Tex.App.--Houston [1st Dist.] 2004, no pet.)(declining to extend Huizar
punishment phase reasonable doubt instruction on extraneous offenses to
guilt-innocence charge).  Egregious harm
consists of errors that affect A>the very basis of the case,= deprive the defendant of a >valuable right,= or >vitally
affect a defensive theory.=@ 
Hutch v. State, 922 S.W.2d 166, 171 (Tex.Crim.App. 1996), quoting
Almanza v. State, 686 S.W.2d 157, 172 (Tex.Crim.App. 1984).  In determining the degree of harm, we look to
the entire jury charge, the state of the evidence including contested issues,
and the weight of the probative evidence, arguments of counsel, and any other
relevant information from the record.  Almanza,
686 S.W.2d at 171.  Further, the record
must show that a defendant has suffered actual, rather than merely theoretical
harm from the jury instruction error.  Id. at 174.








Here, the record
reflects that Appellant was charged with sexual assault of a child by
penetrating L.B.=s vagina
with his finger (Count I) and indecency with a child by touching L.B.=s breast (Count II).  As to each count, the jury was instructed
that it must find from the evidence beyond a reasonable doubt that he committed
the offense as charged.  Further, the
jury was instructed that in the event it had a reasonable doubt as to the
defendant=s guilt
after considering all the evidence and the jury instructions, it must find the
defendant not guilty.  The jury was
unable to reach a verdict as to Count I and Appellant=s
motion for a mistrial on that count was granted.  Examining the record, we also observe that in
its first closing argument, the State made no reference to the extraneous
offense evidence.  In contrast, defense
counsel=s closing
argument emphasized L.B.=s
testimony about the six different incidents, arguing that L.B.=s failure to tell Ms. Aguilar about all
of the incidents during her interview affected her credibility.  In the State=s
final closing argument, it responded to the attack on L.B.=s credibility, by pointing out the
level of detail L.B. provided when testifying about the various incidents and
noting that Appellant admitted to some of the facts alleged.  Given the jury charge as a whole, the lack of
undue emphasis on the extraneous offense evidence by the State, and the state
of the evidence against Appellant, we conclude that Appellant was not harmed by
any improper omission of a reasonable doubt instruction in the guilt-innocence
charge.  Issues One through Four are
overruled.








In Issue Five,
Appellant contends that the trial court erred in failing to require the State
to elect which two occurrences of the sexual encounters testified to, that it
was relying on to prove the charged offenses. 
Relatedly, Appellant argues in his sixth issue that the trial court=s failure to require such election
abridged his right to a unanimous verdict. 
The State may present evidence of multiple occurrences of the acts
alleged in the indictment.  See Worley
v. State, 870 S.W.2d 620, 622 (Tex.App.--Houston [1st Dist.] 1994, pet. ref=d). 
Once the State rests its case-in-chief, upon a timely request by the
defendant, the trial court must order the State to elect the act upon which it
will rely for conviction.  O=Neal v. State, 746 S.W.2d 769, 771
(Tex.Crim.App. 1988).  However, absent a
request, the State is not required to make an election and no error is
implicated.  Id. at 771 n.3; Crawford v. State,
696 S.W.2d 903, 906 (Tex.Crim.App. 1985). 
Here, Appellant did not request that the State make an election,
therefore he has failed to preserve his complaints concerning the trial court=s failure to order the State to make an
election and any consequent abridgement of his right to jury unanimity.  Issues Five and Six are overruled.

In Issues Six (A)[1],
Seven, and Eight, Appellant argues that the trial court erred in allowing
testimony from witnesses Anna Barrera, R.B., and expert witness Cynthia Aguilar
concerning the complainant=s
veracity.  Appellant, however, raised no
objection to the complained-of testimony, therefore he has failed to preserve
these issues for appellate review.  See
Tex.R.App.P. 33.1(a).  We overrule Issues Six (A), Seven, and Eight.

In his final
issue, Appellant contends that he was denied effective assistance of
counsel.  Specifically, Appellant argues
that his trial counsel was ineffective by: 
(1) failing to object to extraneous offenses at the guilt/innocence
phase; (2) failing to request an election and limiting instructions; and (3)
failing to object to bolstered testimony.








We apply a
two-pronged test to ineffective assistance of counsel claims.  Strickland v. Washington, 466 U.S. 668, 687,
104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). 
First, the appellant must show that counsel=s
performance was deficient, that is, counsel=s
representation fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 687-88,
104 S.Ct. at 2064; Thompson v. State, 9 S.W.3d 808, 812 (Tex.Crim.App.
1999).  Second, the appellant must show
that counsel=s
deficient performance prejudiced the defense. 
Strickland, 466 U.S.
at 687, 104 S.Ct. at 2064; Jackson v. State, 877 S.W.2d 768, 771
(Tex.Crim.App. 1994).  This requires the
appellant to show there is a reasonable probability that but for counsel=s unprofessional errors, the result of
the proceeding would have been different. 
Strickland, 466 U.S.
at 694, 104 S.Ct. at 2068; Jackson, 877 S.W.2d at 771.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome.  Strickland, 466 U.S. at 694,
104 S.Ct. at 2068; Jackson, 877 S.W.2d at 771.  The defendant bears the burden of proving
ineffective assistance by a preponderance of the evidence.  Thompson, 9 S.W.3d at 813.  

In reviewing
claims of ineffective assistance, we must indulge a strong presumption that
counsel=s conduct
falls within the wide range of reasonable professional assistance and the
appellant must overcome the presumption that the challenged conduct might be
considered sound trial strategy.  Thompson,
9 S.W.3d at 813; Strickland, 466 U.S. at 689, 104 S.Ct. at
2065.  Any allegation of ineffectiveness
must be firmly founded and affirmatively demonstrated in the record to overcome
this presumption.  Thompson, 9
S.W.3d at 813; see Jackson,
877 S.W.2d at 771.  In the majority of
instances, this task is extremely difficult because Athe
record on direct appeal is simply undeveloped and cannot adequately reflect the
failings of trial counsel.@  Thompson, 9 S.W.3d at 813-14.  When faced with a silent record as to counsel=s strategy, this Court will not
speculate as to the reasons for counsel=s
actions.  See Jackson, 877 S.W.2d at 771.  In this case, Appellant did not file a motion
for new trial to challenge the alleged ineffectiveness of his counsel.  The record before this Court does not contain
trial counsel=s
explanations of the reasons for his actions, therefore it will be difficult for
Appellant to rebut the strong presumption that trial counsel=s conduct falls within the wide range
of reasonable professional assistance.  See
Thompson, 9 S.W.3d at 814.








First, Appellant
complains that his counsel was ineffective for allowing the introduction of
inadmissible extraneous offenses.  Again,
Appellant fails to specify which alleged extraneous offenses he complains of,
but we presume his claim is based on the following alleged extraneous offenses:  (1) the New Year=s
Eve body caressing incident; and (2) the kissing/showering incident.  Appellant does not state what objection his
counsel should have made to the alleged extraneous offenses nor does he argue
that the trial court would have sustained any objection.  In this case, the alleged extraneous offense
evidence would have been admissible under Article 38.37, section 2 of the Texas
Code of Criminal Procedure for its bearing on relevant matters, including the
state of mind of Appellant and the child-victim and their previous and
subsequent relationship.  See Tex.Code Crim.Proc.Ann. art. 38.37, ' 2 (Vernon Supp. 2006).  Further, the trial court could have
reasonably found that the probative value of such evidence substantially
outweighed any danger of unfair prejudice under Rule 403.  See Tex.R.Evid.
403; Wheeler v. State, 67 S.W.3d 879, 888 (Tex.Crim.App. 2002)(rules of
evidence require exclusion of relevant evidence only if the danger of unfair
prejudice, delay, or needless repetition substantially outweighs the probative
value).  Appellant has failed to show
that his trial counsel=s
performance was deficient on this ground.








Next, Appellant
claims that his counsel was ineffective because he failed to require the trial
court to require the State to elect which of the two events that it wished to
proceed on.  Appellant contends there is
no plausible strategy for this failure, however, absent an election, Appellant
is protected against future prosecutions for the separate acts of misconduct
upon which the jury could have convicted him. 
See Rodriguez, 104 S.W.3d at 91 (subsequent prosecution based
upon the separate acts of misconduct are jeopardy-barred); Ex parte
Goodbread, 967 S.W.2d 859, 861 (Tex.Crim.App. 1998)(if the State does not
make an election, it is barred from future prosecution of any offense within
the scope of the indictment and the evidence introduced at trial).  The failure to request an election, could
have been sound trial strategy given the obvious double jeopardy benefit in
this case.  Because counsel=s conduct fell within the wide range of
reasonable professional assistance, Appellant has not shown that his counsel
was ineffective for failing to request an election.

Appellant also
argues that his counsel was ineffective for failing to request limiting
instructions concerning the extraneous offenses and for failing to object to
witness testimony concerning the veracity of the complainant.  With regard to both complaints, we are faced
with a silent record as to the reasoning and strategy underlying trial counsel=s actions or omissions.  Without engaging in any undue speculation, we
note that it is plausible that trial counsel could have sought to avoid drawing
any further attention to the alleged extraneous offenses.  Moreover, the lay witness testimony
concerning the complainant=s
veracity would have been admissible under Rule 608(a) of the Texas Rules of
Evidence and the same complained-of expert witness testimony was elicited by
Appellant during cross-examination.  See
O=Bryan v.
State, 591 S.W.2d 464, 476 (Tex.Crim.App. 1979)(State may rehabilitate the
complainant with evidence of the complainant=s
character for truthfulness when complainant is impeached with prior
inconsistent statements); Leday v. State, 983 S.W.2d 713, 718
(Tex.Crim.App. 1998)(improper admission of evidence does not constitute
reversible error if the same facts are shown by other unchallenged
evidence).  Thus, Appellant has not met
his burden under either prong of Strickland.








Finally, Appellant
asserts that his counsel was ineffective because A[i]n
this case, the Jury sentencing on the basis of 6 to 12 events as against two
was fundamentally unfair under any totality test.@  Appellant provides no further explanation for
his contention nor does he provide any supporting authority.  We find that Appellant has waived his
contention based on inadequate briefing, thus he has not preserved this
complaint for review.  See Tex.R.App.P. 38.1(h)(the appellate
brief must contain a clear and concise argument for the contentions made, with
appropriate citations to authorities and to the record); see also Peake v.
State, 133 S.W.3d 332, 334 (Tex.App.--Amarillo 2004, no pet.)(ineffective
assistance complaint overruled based on inadequate briefing).  Appellant=s
ninth issue is overruled.

We affirm the
trial court=s
judgment.

 

 

 

September
28, 2006

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.

Barajas, C.J., Not Participating

 

(Do Not Publish)











[1]
Appellant inadvertently labeled two issues with the same number.  For sake of clarity we will refer to the
second sixth issue as Six (A).