

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00090-CR

_____

DARONDA MODENA SIKES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th Judicial District Court
Red River County, Texas
Trial Court No. CR01566

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

After a Red River County jury found Daronda Modena Sikes guilty of possession of methamphetamine, between one and four grams,[1] the trial court, without any objection from Sikes' counsel, ordered community supervision,[2] conditioned that Sikes first serve 180 days in county jail and then complete a substance abuse felony program.   On appeal, Sikes complains of those conditions of community supervision and of the representation by her trial counsel.  We affirm the trial court's judgment because (1) the conditions placed on Sikes' community supervision were permitted and (2) Sikes' trial counsel was not shown to have been ineffective.

*(1)      The Conditions Placed on Sikes' Community Supervision Were Permitted*

Sikes complains that when the trial court ordered, as conditions of community supervision, that Sikes first serve 180 days in the county jail, then complete a substance abuse felony program,[3] such conditions were beyond the trial court's authority.

The trial court followed the jury's recommendation of a three-year sentence probated for seven years, but also imposed conditions on the community supervision.   The trial court ordered Sikes to spend 180 days in the Red River County Jail and, following that period, that she attend a SAFPF for not less than ninety days and not more than one year.

---

[1]*See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c) (West 2010).

[2]The jury recommended, and Sikes was ordered to serve, a sentence of three years, probated for seven years.

[3]"SAFPF," where the last "F" stands for "facility;" the facilities are also referred to as SATF, substance abuse treatment facilities.    *See generally* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 14 (West Supp. 2011).

The trial court has wide discretion in imposing conditions and terms on a defendant's grant of community supervision. *Speth v. State*, 6 S.W.3d 530, 533 (Tex. Crim. App. 1999); *see also* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 11 (West Supp. 2011). A defendant must object to any conditions of community supervision that he or she opposes at the trial court; otherwise, such complaints are not preserved for appellate review. *Speth*, 6 S.W.3d at 534–35; *Ledet v. State*, 177 S.W.3d 213, 221 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (failure to object to 180 days' confinement as condition of community supervision waives appellate review). Because Sikes posed no objections to the trial court's conditions at sentencing or in a motion for new trial, she waived this complaint.

In spite of that waiver, Sikes claims that the trial court's conditions of community supervision made the sentence illegal, constituting fundamental error, which may be urged on appeal without preserving the complaint in the trial court. She directs us to statutory authority that a trial court may order a defendant confined for not more than 180 days in a county jail as a condition of community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 12(a) (West Supp. 2011). Sikes' reasoning is that, because a stay at a SAFPF necessarily is at least ninety days,[4] any time in a SAFPF would push Sikes' confinement beyond the maximum 180 days allowed by Article 42.12, Section 12(a). Thus, according to Sikes, the trial court's conditions of community supervision were unauthorized and illegal.

---

[4]*See* TEX. CODE CRIM. PROC. ANN. art. 42.12 § 14(a).

As part of its wide discretion in setting conditions of community supervision, the trial court here was authorized to require Sikes to serve up to 180 days in the county jail as a term of community supervision.  TEX. CODE CRIM. PROC. ANN. art. 42.12 , § 12(a).   Sikes has directed us to no authority that the trial court cannot impose both conditions—county jail time and confinement in a SAFPF—as conditions of community supervision.   Article 42.12, Section 12(a) addresses confinement in a county jail; Article 42.12, Section 14(a) addresses confinement in a SAFPF.  TEX. CODE CRIM. PROC. ANN. art. 42.12, §§ 12(a), 14(a).   Sikes argues that, since she has been ordered confined both in county jail and in a SAFPF, the trial court exceeded the allowable amount of confinement time as a condition of community supervision.   This argument ignores the different places of confinement:   the county jail versus the SAFPF.[5]   The limit of 180 days for a felony appears only in Section 12(a), authorizing confinement in a county jail.  We have found no authority barring two separate confinements where each is a distinct, authorized condition of community supervision.   Here, the confinement in the county jail does not exceed 180 days.   Thus, the trial court order did not constitute an illegal sentence.  *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 12(a); *Tamez v. State*, 534 S.W.2d 686, 691 (Tex. Crim. App. 1976).

---

[5]Sikes also argues that because a defendant may receive credit against her ultimate sentence for time spent in a SAFPF, that further supports the conclusion such time counts as "confinement."  *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 23(b) (West Supp. 2011).   This argument has no bearing on the instant situation:   a defendant receives credit against a sentence only after having his or her community supervision revoked and being sentenced.   This still does not take into account that the two sections authorizing conditions of community supervision refer to confinement in two separate facilities, county jail and a SAFPF.

The conditions of community supervision ordered by the trial court were permissible, not illegal. We overrule this point of error.

*(2)     Sikes' Trial Counsel Was Not Shown to Have Been Ineffective*

Sikes also asserts ineffective assistance from her trial counsel in various actions taken during trial.   In order to ultimately prevail in a claim that trial counsel was ineffective, a defendant seeking to challenge counsel's representation must establish that his or her counsel's performance was deficient and prejudiced the defense.[6]   *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009) (citing *Strickland*, 466 U.S. at 687; *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002)).   Any allegation of ineffectiveness of counsel must be firmly founded in the record. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Wallace v. State*, 75 S.W.3d 576, 589 (Tex. App.—Texarkana 2002), *aff'd*, 106 S.W.3d 103 (Tex. Crim. App. 2003).   Sikes bears the burden of proving by a preponderance of the evidence that her trial counsel was ineffective. *Thompson*, 9 S.W.3d at 813; *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984).

First, Sikes must show that counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms.   *Strickland*, 466 U.S. at 687–88.   There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that the challenged action could be considered sound trial strategy.

---

[6]We apply the two-pronged *Strickland* test handed down by the United States Supreme Court to determine whether Sikes received ineffective assistance of counsel.   *Strickland v. Washington*, 466 U.S. 668 (1984).   Failure to satisfy either prong of the *Strickland* test is fatal.   *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006).

*Id.* at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Therefore, we will not second-guess the strategy of Sikes' counsel at trial through hindsight. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Hall v. State*, 161 S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref'd). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 813. In most cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel. *Id.* at 813–14; *see also Jackson*, 877 S.W.2d 768, 771–72 (Tex. Crim. App. 1994) (en banc) (when record fails to show why counsel did not present certain evidence at trial on punishment, reviewing court cannot conclude counsel's performance deficient). The mere fact that another attorney might have tried the case differently does not support a finding of ineffective assistance of counsel. *Hawkins v.. State*, 660 S.W.2d 65, 75 (Tex. Crim. App. 1983).

The second *Strickland* prong, prejudice, requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome, meaning that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Smith*, 286 S.W.3d at 340.

In one of her complaints, Sikes asserts that her trial counsel was deficient in not objecting to the purportedly illegal sentence assessed by the trial court, i.e., the conditions of community supervision imposed. As discussed in the first part of this opinion, the trial court was within its

discretion in implementing the conditions of community supervision. So, the sentence was not illegal. Counsel has no obligation to object to a legal sentence. *See Jacoby v. State*, 227 S.W.3d 128, 131 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (to prevail on claim counsel was ineffective for failing to object to allegedly cruel and unusual sentence, appellant must show trial court would have erred in overruling such objection).[7]

Sikes also claims her trial counsel was ineffective because, in questioning Sikes during her case-in-chief, counsel asked Sikes about other arrests that resulted in dismissed charges. Sikes claims this line of questioning opened the door to damaging cross-examination by the State. We do not find this tactic amounted to ineffective assistance of counsel.

Sikes was arrested when a truck in which she was riding was stopped for speeding on a cold November night between Bogata and Clarksville. Sikes was in the middle of the truck's seat; the truck was driven by Burl Harvey. On Sikes' right, in the passenger seat, was a woman named Rhodes. Sikes was wearing a coat she said Harvey gave her. When she exited the truck, Deputy Glenn Briggle said Sikes had her right hand balled into a fist and turned her back to Briggle; she then put her fist in the coat's pocket. When Briggle asked her to remove her right hand from the pocket, Sikes showed the deputy her left hand. Briggle finally had to remove Sikes' right hand from the pocket himself. Her hand was empty, but in the pocket was a small automotive fuse box, in which was found three small baggies containing 1.67 grams of

---

[7]*See also Ex parte Thompson*, 179 S.W.3d 549, 559–60 (Tex. Crim. App. 2005) (defendant not entitled to jury charge on lesser included offense; therefore, counsel not ineffective for failing to request); *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992) (counsel not ineffective for failing to object to admissible evidence).

methamphetamine. Sikes first told the deputy the jacket was Harvey's. She then said Harvey had given her a piece of gum, which she put in the pocket (no gum was found on Sikes or in the coat). Finally, Sikes told the deputy that Harvey had handed the fuse box to her, telling her he was on parole and could not get caught with "it."[8]

Sikes testified to the jury that she did not know the drugs were in the coat pocket and that she did not use drugs.[9] Sikes' defensive theory was that the drugs belonged to Harvey and were found on Sikes' person only because she had borrowed Harvey's coat. Sikes' trial counsel questioned her about her drug use: Sikes said she did not use drugs, but drank enough alcohol to give her cirrhosis of the liver. Her attorney asked Sikes about an arrest in 1993 for possession of amphetamine, which charge had been dismissed: Sikes said she did not remember the case. Counsel asked her about a charge of fraudulent transfer of a motor vehicle, which was also dismissed. Sikes explained the charge revolved around a mix-up in transferring title to a vehicle given her by her father. Sikes said she had been arrested a few months before trial on a charge of driving with a suspended license, which charge was still pending. She again denied using drugs or knowing that Harvey had drugs on the night of their arrest (she earlier acknowledged knowing that Harvey had a history of drug use).

---

[8]Harvey was also charged with possession of the methamphetamine; the record indicates he pled guilty to the charge.

[9]The sufficiency of the evidence is not questioned. The arresting deputy testified that Sikes first denied ownership of the drugs, then said Harvey had handed them to her when the truck was stopped.

Sikes argues that her trial counsel was ineffective for bringing up the topic of her previous arrests. It is true that the State, on cross-examination, revisited these incidents and attempted to elaborate on the circumstances of some of the arrests. For example, questioning Sikes about the allegation of a fraudulent motor vehicle transfer, the State asked Sikes if she knew the man to whom she sold the truck was a convicted drug dealer: Sikes said she did not. The State asked Sikes about her recent arrest for driving with a suspended license. When Sikes confirmed the name of the person at whose house she was arrested, the prosecutor asked her if she knew that person had been convicted of manufacturing a controlled substance: Sikes denied knowing this.[10]

Sikes' attorney questioning her about her history of arrests, without convictions, could be seen as a reasonable way to present her defensive theory that she did not use drugs and therefore would be less likely to have knowingly possessed the methamphetamine found on her person. Sikes complains this questioning allowed the State to question Sikes whether, and insinuate that, she spent time in the company of drug dealers. However, the State could have broached this subject simply by virtue of Sikes taking the stand. During cross-examination of a State's witness, former deputy Briggle, Sikes' lawyer had established that Harvey had been indicted for the same possession of methamphetamine for which Sikes was charged and that Harvey had a prior conviction for possession of a controlled substance in penalty group 1. It is true that the State's

---

[10]The State's question also implied Sikes had been arrested while flushing a toilet; Sikes did not answer this part of the question and the State did not pursue it. In its questioning about these two arrests, the State offered no evidence to support the allegations about the circumstances around the arrests—i.e., to support the State's insinuations the other parties mentioned in fact had the narcotic histories suggested.

follow-up questions, with their insinuations, did not place Sikes in a good light. But our review of trial counsel's representation is highly deferential and we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Strickland*, 466 U.S. at 689; *Tong*, 25 S.W.3d at 712. "We will not second-guess through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness." *Blackmon v. State*, 80 S.W.3d 103, 108 (Tex. App.—Texarkana 2002, pet. ref'd). Without explanation from trial counsel as to his strategy for broaching these subjects—where Sikes had indeed been arrested a few times, but never convicted, and at least two of the prior charges had been dismissed—we do not find Sikes has rebutted the presumption that trial counsel was trying the case with a reasonable strategy.[11]

Even if Sikes had demonstrated deficient performance by her trial attorney, she has failed to show that absent these purported errors, there is a reasonable probability the result of her trial would have been different. The arresting deputy described Sikes' conduct and inconsistent stories at the scene. Even before Sikes' lawyer questioned her about her earlier arrests, she testified she bought her car[12] from a company called Harvey Motors and that she was related to Burl Harvey. This, and defense counsel's earlier admission of the evidence of Harvey's prior

---

[11]*See Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002) (defense counsel should be given opportunity to explain actions before condemning her representation).

[12]Sikes said her car broke down earlier in the evening; a wrecker and Harvey arrived separately, and she took a ride with Harvey to his house. He left, and returned with Rhodes, then was taking Sikes to retrieve possessions from her parents' home when they were stopped by deputies. All this occurred around 1:00 a.m.

drug conviction, could have allowed the State to ask Sikes if she was in the habit of keeping company with drug users. Had Sikes not taken the stand, the jury would have been left with the deputy's description of her suspicious behavior at the scene. Sikes would fail on the prejudice prong of the *Strickland* analysis; we find she can meet neither part of the test to show ineffective assistance of counsel. We overrule this point of error.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     December 5, 2011
Date Decided:       January 6, 2012

Do Not Publish