COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| FRANK ANTONIO SIMONETTI, | § | No. 08-13-00330-CR |
|  | § |  |
| Appellant, | § | Appeal from the |
|  | § |  |
| V. | § | 34th District Court |
|  | § |  |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
|  | § |  |
| Appellee. | § | (TC# 20110D02096) |
|  | § |  |

## O P I N I O N

Frank Antonio Simonetti appeals his convictions of three counts of indecency with a child. A jury found Appellant guilty of each count and assessed his punishment at imprisonment for a term of ten years and a fine of $2,000 on Count I, imprisonment for a term of fifteen years and a fine of $5,000 on Count II, and imprisonment for a term of thirteen years and a fine of $2,500 on Count III. We affirm.

### FACTUAL SUMMARY

In November 2009, thirteen-year-old C.R. received a message on her Myspace page from a modeling company called Diamond Girls. C.R.'s Myspace page included photos of her and her family. C.R. followed the link provided to Diamond Girl's website and she noticed that the company had a requirement that models be fifteen years of age. She informed Diamond Girls via email that she was only fourteen-years-old, and she received a reply that they liked her

pictures and they could work around the age limit. C.R. did not fill out an application at that time. A few months later, she received a second e-mail from Diamond Girls encouraging her to fill out an application. C.R. submitted an application and she received a response from someone named Rocky indicating Diamond Girls would like to do a photo shoot with her. C.R. believed that Rocky was a female.

C.R.'s father, M.R., accompanied her to the photo shoot at a Life Care Center in El Paso.[1] C.R. and her father met with Appellant who uses the nickname "Rocky." M.R. spoke with Appellant at length before allowing him to photograph C.R., and he stayed with her through the entire photo shoot. Appellant set up a second photo shoot, but C.R.'s father did not stay with her during this session because it was going to last for several hours. After Appellant finished taking the photos, he began rubbing C.R.'s neck and then offered to give her a massage. Appellant first massaged her back and began massaging her chest after he had her roll over onto her back. At Appellant's request, C.R. took off her sports bra and Appellant massaged her chest under a towel. He also massaged her thighs. C.R. could see that Appellant had an erection during the massage and he rubbed his "private part" on her hands. He also began touching C.R.'s "private area" over the top of her shorts, but when he tried to reach under her shorts, she sat up and told him to stop. C.R. sat on the edge of the table and Appellant sat down next to her. Appellant then tried to pick C.R. up and put her onto his lap. C.R. pushed him away and ran into the bathroom crying. Appellant knocked on the door until she opened it, and he told C.R. that he was scared and needed to talk to her. Appellant explained some models slept with him to get better

---

[1] Appellant provided information-technology support to the Life Care Center, and in exchange, he was allowed to use clinic space for photo shoots when the clinic was closed.

opportunities and he was just testing her to see if she was going to be that type of model. C.R. believed she would have to lie to Appellant to get out of there, so she told him that everything was okay, she would just forget about what had happened, and she would not tell anyone else. Appellant praised C.R.'s courage and told her that she was going to be his most important model. C.R. did not tell her father what had happened, but two days later, she told her sister because she "couldn't hold it in" any longer. After speaking with a school counselor, C.R. told her father what Appellant had done.

Appellant gave a video-recorded statement to the police about the incident. Appellant admitted that he touched C.R.'s breasts, but he denied touching her nipples or touching her "in a sexual way." He massaged her thighs, including the inner thighs, but he did not touch her "crotch" either over or underneath the clothing. Appellant admitted that he had an erection during the massage and his penis brushed against C.R.'s arm and hand. Appellant denied causing his penis to touch C.R. and he said that he did not have any intent to satisfy his sexual desires. While Appellant was massaging C.R.'s legs, she sat up and told Appellant that she was uncomfortable with the massage. He told her it was okay and hugged her to comfort her.

The indictment alleged that Appellant committed indecency with a child by sexual contact by touching C.R.'s genitals (Count I), by touching her breasts (Count II), and by causing C.R. to contact his genitals (Count III). The jury found Appellant guilty of each count as charged in the indictment.

During the punishment phase, H.A. testified that Appellant, who went by the name "Rocky," contacted her through Facebook and asked her to work as a model for his company,

Diamond Girls. H.A. gave Appellant her cell phone number and he began texting her. The text messages were normal at first, but then Appellant asked her if she would give him a massage in her underwear. He also asked her to send him photos of herself in a bikini or her underwear. H.A. refused.

Appellant then asked H.A. to interview for a modeling job with his company, and H.A. and her father, G.A. met Appellant at Hooters. G.A. told Appellant that H.A. was only sixteen-years-old. Appellant told G.A. that his agency provided models for promotional events at Hooters, Wet & Wild, Cohen Stadium, Harley Davidson, and Club 101, and H.A. would be paid $10 per hour for her work as a model. G.A. agreed that his daughter could work for Appellant, but only on Sunday afternoons, and only if Appellant first notified him when H.A. would be working. The night before H.A.'s first modeling job with Appellant, G.A. discovered that Appellant was sending text messages to H.A. late that evening and into the early morning hours. G.A. read the text messages and confronted his daughter about them. The following day, H.A. told her father that she did not want to go to work with Appellant.

Appellant testified during the punishment phase and asked the jury to give him probation. He admitted that what he did was wrong, but he did not believe that he was a predator or a threat to the community. As he had said in his statement to the police, Appellant admitted that he had touched C.R.'s breasts, but he denied having any intent to gratify his sexual desires. Appellant also denied touching C.R.'s genitals, but admitted that he "got close."

## EXTRANEOUS OFFENSE EVIDENCE

In Issue One, Appellant argues that the trial court abused its discretion by admitting the

testimony of G.A. and H.A. during the punishment phase because (1) the State did not give sufficient notice of its intent to introduce the extraneous offense evidence, and (2) the evidence did not prove he had committed any criminal offense. The State first responds that Appellant failed to preserve his complaint regarding the timeliness of the State's notice.

### *Preservation of Error*

The record reflects that after both parties rested their cases for the guilt-innocence phase of the trial, the prosecutor notified Appellant and the trial court that she had just been given a new police report involving Appellant. The police report pertained to G.A.'s complaint against Appellant. After a discussion on the record regarding several issues, including Appellant's right to request a continuance, the trial court recessed for the day. The following day, the trial court submitted the charge to the jury and the jury began its deliberations. After the jury returned a guilty verdict on each count, the trial court addressed the extraneous offense issue.

The trial court asked Appellant's counsel how much time he would need to investigate the extraneous offense evidence, and counsel responded that it was his inclination to proceed with the trial because he did not want the jury "stewing" on the case for a week. Counsel also stated that the defense had been given an adequate amount of time to review the police reports. The trial court then conducted a hearing outside of the jury's presence to determine if the evidence was admissible. After ruling that the evidence was admissible, the court again asked Appellant's counsel whether he wanted a continuance. Counsel responded that they were going to waive the court's offer to continue the case and instead proceed with the trial. Rule 404(b) provides that, upon timely request by the accused in a criminal case, the prosecution must give

reasonable notice in advance of trial of its intent to introduce in the State's case-in-chief evidence of other crimes, wrongs, and acts other than that arising in the same transaction. TEX.R.EVID. 404(b). The purpose behind the notice provision is to adequately make known to the defendant the extraneous offenses the State intends to introduce at trial and to prevent surprise to the defendant. *Martin v. State*, 176 S.W.3d 887, 900 (Tex.App.--Fort Worth 2005, no pet).

To preserve a complaint for appellate review, a party must make a timely and specific objection in the trial court. *See* TEX.R.APP.P. 33.1. This preservation requirement applies to an issue asserting that the State failed to give reasonable notice under Rule 404(b). *See e.g., Blackmon v. State,* 80 S.W.3d 103, 107 (Tex.App.--Texarkana 2002, pet. ref'd)(defendant did not preserve issue regarding State's alleged failure to give him notice of intent to introduce extraneous offense evidence because defendant failed to object on this ground at trial). Appellant did not make any objection in the trial court to the lack of sufficient notice under Rule 404(b). Further, he rejected the trial court's offer to continue the case. Consequently, we find that Appellant did not preserve any complaint about a lack of notice under Rule 404(b). *See Martin*, 176 S.W.3d at 900 (to preserve error related to the State's failure to provide reasonable notice of its intent to introduce extraneous-offense evidence, the defendant must request a continuance).

### *No Criminal Offense Committed*

Appellant also contends that the trial court abused its discretion by admitting the "non-extraneous, non-criminal act" evidence related to Appellant's interactions with H.A. We

understand Appellant to argue that the evidence is inadmissible under Article 37.07 because the conduct in question is not a criminal offense. Article 37.07 of the Code of Criminal Procedure provides in relevant part that:

> [E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to . . . evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible . . . .

TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a)(1)(West Supp. 2015).

Article 37.07 permits the prosecution to offer evidence of any extraneous crime or bad act that is shown, beyond a reasonable doubt, either to have been (1) an act committed by the defendant or (2) an act for which he could be held criminally responsible. *Haley v. State*, 173 S.W.3d 510, 514 (Tex.Crim.App. 2005). Under this statute, it is irrelevant whether the conduct the offering party is attempting to prove is, or can be characterized, as an offense under the Texas Penal Code. *Haley*, 173 S.W.3d at 514-15. The statutory language makes it clear that the statute does not require the State to necessarily prove that the act was a criminal act or that the defendant committed a crime. *Haley*, 173 S.W.3d at 514-15.

The evidence in question showed that thirty-seven-year-old Appellant sent text messages to a sixteen-year-old girl asking that she give him a massage while she was in her underwear and that she send him photos of her dressed only in her underwear or in a bikini. The trial court did not abuse its discretion by admitting this evidence because the court could have found, in the exercise of its discretion under Article 37.07, that the evidence was relevant to sentencing. Issue One is overruled.

## NO REASONABLE DOUBT INSTRUCTION

In Issue Two, Appellant argues that the trial court erred by failing to instruct the jury that it could not consider the bad act evidence unless the jury found beyond a reasonable doubt that Appellant committed the bad act. The State concedes that the trial court failed to so instruct the jury, but it argues that any error was harmless.

When punishment phase evidence of extraneous offenses or bad acts evidence is admitted, the trial court is required to *sua sponte* instruct the jury on the reasonable-doubt standard of proof concerning the extraneous offenses and bad acts. *Huizar v. State*, 12 S.W.3d 479, 483-84 (Tex.Crim.App. 2000); *Allen v. State*, 47 S.W.3d 47, 50 (Tex.App.--Fort Worth 2001, pet. ref'd). Appellant did not object to the trial court's failure to include the reasonable doubt instruction. Consequently, the error must be reviewed under *Almanza's* egregious harm standard. *Ellison v. State*, 86 S.W.3d 226, 228 (Tex.Crim.App. 2002); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985)(op. on reh'g).

When analyzing egregious harm, we consider the four factors set out in *Almanza*: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171. The harm which must be considered is the impact of the omission in the jury charge of a reasonable-doubt instruction. *Ellison*, 86 S.W.3d at 228.

Appellant did not dispute that he sent text messages to H.A. During his punishment phase testimony, Appellant admitted that he sent H.A. a text message asking her to give him a

massage while she was wearing only her underwear.  The State mentioned, but did not unduly emphasize, the bad act evidence during closing arguments.  We conclude that Appellant did not suffer egregious harm from the trial court's failure to instruct the jury that it was required to find beyond a reasonable doubt that Appellant committed the bad act involving H.A.  Issue Two is overruled.  Having overruled both issues, we affirm the judgment of the trial court.


April 13, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)